UNITED STATES of America,
Plaintiff–Appellee,

v.

Thompson B. SANDERS,
Defendant–Appellant.

No. 88–3274.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 8, 1989.

Decided Jan. 5, 1990.

Rehearing and Rehearing En Banc
Denied Feb. 6, 1990.

See also, D.C., 696 F.Supp. 334.

134

Ruben Castillo, Thomas M. Durkin and
Joel Bertocchi (argued), Asst. U.S. Attys.,
Chicago, Ill., for plaintiff-appellee.

Scott R. Lessar, Dan K. Webb (argued), and Stephen J. Senderowitz, Tenenbaum & Senderowitz, Chicago, Ill., for defendant-appellant.

Before CUMMINGS and POSNER, Circuit Judges, and GORDON, Senior District Judge.[1]

MYRON L. GORDON, Senior District Judge.

Thompson Sanders seeks a reversal of his criminal conviction or, alternatively, a new trial. Pursuant to 28 U.S.C. § 1291, this court has jurisdiction to consider his appeal. We will affirm the defendant's conviction but will remand the case for the correction of the sentence.

■ After the judgment of conviction had been entered, the district court discovered that it had illegally sentenced the defendant by imposing a sentence on count one which was greater than the statutory maximum; it then filed an order modifying the sentence. The problem is that the district court attempted to correct the sentence subsequent to the defendant's filing of his notice of appeal. Such filing divested the district court of its jurisdiction. *United States v. O'Connor*, 874 F.2d 483, 489 (7th Cir.1989). Both sides agree that a remand is necessary to effect the correction of the sentence.

On February 9, 1988, a federal grand jury returned a six-count indictment against Mr. Sanders, a former Chicago Board of Trade member, and three co-defendants. On July 5, 1988, the grand jury returned a superseding indictment charging Mr. Sanders and the others in 11 counts. Count one charged Mr. Sanders with conspiring to commit wire fraud in violation of 18 U.S.C. § 1343 and conspiring to violate 7 U.S.C. §§ 6h and 13. Counts two through six charged Mr. Sanders with wire fraud in violation of 18 U.S.C. § 1343. Count seven charged him with interstate transportation of property taken by fraud in violation of 18 U.S.C. § 2314. Counts

eight through eleven charged him with violating 7 U.S.C. §§ 6h and 13 by aiding and abetting a co-defendant's misrepresentation that the latter was an agent of a member of a contract market in handling an order.

Mr. Sanders denied his guilt as to all counts. Prior to trial, the co-defendants entered guilty pleas and testified against Mr. Sanders, and on September 14, 1988, a jury convicted him of all counts. The final judgment was entered on November 3, 1988; Mr. Sanders appeals therefrom, raising ten issues on appeal. He asserts that the first five points of error, when combined with one another, warrant reversal of his conviction and a new trial. Singly or allied, these first five claims of error do not justify a reversal. The remaining five contentions have been considered and must also be rejected.

I.

■ Mr. Sanders argues that the government prosecutors, in their closing arguments, impermissibly referred to Mr. Sanders' failure to testify. The following remark by the prosecutor is the first alleged violation of Mr. Sanders' fifth amendment protection:

Both Dewey and Kolton testified they had an intent to deceive, to misrepresent, to lie. And Sanders said he had an—and, of course, Mr. Sanders they testified, they weren't sure what Mr. Sanders' intent was.

The district court, in denying the defendant's motion for a mistrial, characterized the statement as "inadvertent" and "unintentional."

The second alleged constitutional violation occurred in the government's rebuttal argument:

Let me talk for something, about something, in my last minute here that we don't have in this case. We don't have the wig. We don't know where Mr. Sanders put it.

---

**1.** Honorable Myron L. Gordon, Senior District Judge of the Eastern District of Wisconsin, is     sitting by designation.

Mr. Sanders maintains that the two quoted statements add up to an inappropriate comment on Mr. Sanders' failure to testify. We disagree.

It is clear that both of these statements are, at most, singularly tangential, indirect references to the defendant's failure to testify. "[I]ndirect references to a defendant's silence at trial violate the Fifth Amendment only if the 'language used was manifestly intended to be or was of such a character that the jury would naturally and necessarily take it to be a comment on the defendant's failure to testify.'" *United States v. Perez*, 870 F.2d 1222, 1229 (7th Cir.1989), *cert. denied, sub nom. Calderon–Abeja v. United States*, — U.S. —, 110 S.Ct. 136, 107 L.Ed.2d 95 (1989), *quoting United States ex rel. Burke v. Greer*, 756 F.2d 1295, 1300 (7th Cir.1985). We are satisfied that the statements were not "manifestly intended" to be comments on Mr. Sanders' failure to testify, and accordingly the statements fail the first part of the standard.

Would the jury "naturally and necessarily" interpret the statements to be an observation about Mr. Sanders' silence? We conclude that a jury would not be led to such a conclusion. The remark about the wig is not of the same character as the comments made in *United States v. Hastings*, 660 F.2d 301, 303 (7th Cir.1981), *rev'd* 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983), where the "prosecution alluded to the failure of the defendants to deny raping and kidnapping the three women." In the case at bar, the matters concerning the wig and how it was used were discussed throughout the trial. By the conclusion of the trial, the jury heard numerous references to the wig's absence. The prosecutor's statement that, "We don't know where Mr. Sanders put it" does not beg for an explanation *by the defendant* of the wig's whereabouts.

## II.

▇ The defendant claims as error the admission of the former co-defendants' guilty pleas during the government's case-in-chief. Given the trial strategy of the defense, the admission of such evidence was inevitable. Relying on the following admonition found in *United States v. Bryza*, 522 F.2d 414, 425 (7th Cir.1975), *cert. denied*, 426 U.S. 912, 96 S.Ct. 2237, 48 L.Ed.2d 837 (1976), the defendant asserts that the district court abused its discretion in admitting into evidence the guilty pleas of Mr. Sanders' former co-defendants:

Normally the fact that co-defendants have entered guilty pleas has no place in another defendant's trial.

Guilty pleas of co-defendants should be brought to the attention of the jury in only certain narrow instances; i.e., when it is used to impeach trial testimony or to reflect on a witness' credibility in accordance with the standard rules of evidence; where other co-defendants plead guilty during trial and are conspicuously absent; where opposing counsel has left the impression of unfairness which raises the issue or invites comment on the subject....

*Bryza* at 425. (footnote omitted)

*Bryza* does not limit the admission of guilty pleas to the above-enumerated factual situations. As Chief Judge Bauer, the author of *Bryza*, recently wrote:

Thus, to foreclose the possibility that the government had singled out [the defendant] for prosecution, while permitting his co-defendant to go free, the testimony at issue was properly elicited.

*United States v. McGrath*, 811 F.2d 1022, 1024 (7th Cir.1987).

Another exception applies where the government seeks to "blunt the impact of cross examination and to avoid the impression that the government was concealing the information." *United States v. Davis*, 838 F.2d 909, 918 (7th Cir.1988).

In both the district court and on appeal, the government argued that the admission was warranted under the *McGrath* exception. In that case, this court concluded that without testimony about the guilty plea, the jury would be left to infer that the former co-defendant went unpunished or that Mr. McGrath was singled out for prosecution. Relying on *McGrath*, the district court found the same to be true in the case

at bar. Additionally, the district court submitted to the jury government instruction # 18 which provided, in part: "Moreover, their guilty pleas are not to be considered as evidence against the defendant." While the admission of Mr. Sanders' co-defendants' guilty pleas may appear facially contrary to *Bryza*, the district court did not abuse its discretion in allowing the evidence.

### III.

■ The defendant also claims that there was an error concerning an evidentiary ruling. On January 17, 1987, and March 4, 1987, co-conspirator Pelleu, while acting as a government informant, taped phone conversations that he had with Mr. Sanders. These phone conversations were admitted into evidence over the defendant's objection. As part of his defense, Mr. Sanders made an offer of proof, through Mr. Dewey, that Mr. Sanders' state of mind at the time he made those statements was that he was "playing along" with Mr. Pelleu. Mr. Sanders argued that this evidence was admissible under the state of mind exception to the hearsay rule. After Mr. Dewey was questioned on this issue, the district court was unpersuaded that sufficient foundation had been laid for Mr. Dewey's testimony on the matter.

Notwithstanding the fact that the defendant failed to show that the state of mind exception applied, the defendant cites *United States v. Peak*, 856 F.2d 825, 834 (7th Cir.1988), *cert. denied*, — U.S. —, 109 S.Ct. 499, 102 L.Ed.2d 535 (1988), in support of his position that the district court committed reversible error.

> An erroneous evidentiary ruling in a criminal case is reversible error only if it affects a party's substantial rights. Fed. R.Crim.P. 52(a); Fed.R.Evid. 103(a). The Supreme Court has interpreted this rule to require reversal only if "the error results in actual prejudice because it 'had substantial and injurious effect or influence in determining the jury's verdict.'"

*Peak* at 834. (citations omitted)

The *Peak* court further stated: "When erroneously excluded evidence would have been the only or primary evidence in support of or in opposition to a claim or defense, its exclusion is deemed to have had a substantial effect on the jury." *Id.*

Assuming, *arguendo*, that the testimony was within the state of mind exception, the testimony of Mr. Dewey was not the defendant's sole means of proving that he lacked the intent to defraud. In fact, Mr. Sanders produced several witnesses who testified that Mr. Sanders' intention was to hide assets from his ex-wife's divorce lawyer.

### IV.

■ These same tape recordings are the basis for the defendant's fourth point of error. Mr. Sanders charges that the government reneged on its promise not to introduce the tape recordings as evidence of prior bad acts and that the defendant relied on that promise to his detriment. The defendant does not claim, nor could he claim, that he did not receive adequate notice that the government intended to use the tapes as evidence against him. Indeed, the defense had ample access to the tapes at an early date. The thrust of the defendant's argument is that the district court should not have allowed the admission of the tapes into evidence because the government had not indicated to the defendant in a timely fashion that it intended to use the tapes as evidence of the defendant's prior bad acts. Rule 404(b), Federal Rules of Evidence. Previously, the government had submitted that it would seek the admission of the tapes under Rule 801(d)(2)(E) or Rule 801(d)(2), Federal Rules of Evidence.

■ The question before this court is whether the district court abused its discretion when it allowed the government to proceed with its Rule 404(b) evidence despite the fact that the government had not identified the tapes as evidence of prior bad acts. *See United States v. D'Antoni*, 856 F.2d 975, 984 (7th Cir.1988). There is no constitutional right to discovery in a criminal case. *United States v. Napue*, 834 F.2d 1311, 1316 (7th Cir.1987). Due process requires the government to disclose exculpatory evidence, *see Brady v. Mary-*

*land,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215; Rule 16, Federal Rules of Criminal Procedure, provides for the production of other evidence. However, the government is not required to pinpoint every aspect of its strategy. *United States v. Elam,* 678 F.2d 1234, 1253 (5th Cir.1982).

■ While the government is expected to honor the positions previously taken with regard to discovery, it cannot be said that a change in plans will necessarily amount to harmful error. The district court's decision to admit the evidence may have required the defendant to shift gears in the middle of trial, but it cannot be said that the ruling was an abuse of discretion. The district court, having had the benefit of both sides' written and oral submissions on the issue, concluded that Mr. Sanders was not prejudiced by surprise in that he had had ample notice of the existence and contents of the tapes. We agree.

## V.

■ The fifth point of error addresses the manner in which the district court responded to the jury's request for certain items of evidence during its deliberations. The jury asked that the Pelleu/Sanders tapes be replayed. Also, they wanted partial transcripts of the Pelleu/Kolton/Dewey testimony. These requests came within minutes of each other. In the defendant's view, the jury's request for the partial transcripts was favorable to him while the request for the tapes was damaging to him. At the time that the jury transmitted its requests, the district judge was not available in person, but he instructed the marshal to play the tapes for the jury. After hearing the tapes, but before the partial transcripts were available, the jury informed the court that it had reached a verdict. Before accepting the verdict, the court offered the jury the opportunity to see the transcripts; the jury declined.

With the benefit of hindsight, it may have been better, arguably, to have submitted the requested material all at once. Nevertheless, we are persuaded that the district judge did not commit error, let alone reversible error, by invoking the above procedure.

## VI.

■ Next, Mr. Sanders asserts that the government's allegations and proof were deficient on the wire fraud conspiracy charges. Specifically, he maintains that a violation of the wire fraud statute necessarily requires proof that someone actually lost money or property as a result of the scheme. This position is untenable. The aim of the mail and wire fraud statutes is to punish the scheme to defraud rather than the end result. *United States v. Cosentino,* 869 F.2d 301, 307 (7th Cir.1989), *cert. denied,* — U.S. —, 109 S.Ct. 3220, 106 L.Ed.2d 570 (1989); *see also United States v. Dial,* 757 F.2d 163, 179 (7th Cir. 1985), *cert. denied,* 474 U.S. 838, 106 S.Ct. 116, 88 L.Ed.2d 95 (1985). The scheme developed by Mr. Sanders put the risk of loss on the brokers; such a plan is an actionable fraud under the wire fraud statute. "[I]t is fraud to impose an enormous risk of loss on one's employer through deliberate misrepresentations even if the risk does not materialize." *Id.*

## VII.

■ Mr. Sanders maintains that the telephone communications alleged as part of the wire fraud charges did not facilitate the scheme as the calls were made after the trades. "[M]ailings and calls which occur after the defendant has obtained the victims' money are in furtherance of the scheme if they facilitate concealment or postpone investigation of the scheme." *United States v. Eckhardt,* 843 F.2d 989, 994 (7th Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 106, 102 L.Ed.2d 81 (1988), citing *United States v. Lane,* 474 U.S. 438, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986); *see also, United States v. O'Connor,* 874 F.2d 483, 486 (7th Cir.1989).

The fact that the government did not produce testimony regarding the contents of some of the charged calls is not fatal. The government's witness, the former codefendant Daniel Dewey, testified that he would call Mr. Sanders after each trade to

discuss the profitability of the trades. Mr. Dewey specifically related the subject matter of the call placed on May 25, 1988, but could not recall the exact contents of two of the later calls. Although the jury did not have before it the conversations, the jury could reasonably infer that the latter calls were similar in nature to the call on May 25, 1988.

## VIII.

■ The next issue is whether the government's allegations and proof were deficient as to violations of the commodity regulations for failure to allege and to prove that a false representation was made to a public customer in violation of 7 U.S.C. §§ 6h and 13.

We reject the defendant's position. Nothing in the plain language of § 6h requires that the representation be made to a "public customer." Further, the legislative history of the statute does not clearly establish that such was the intent of the act. In pertinent part, § 6h provides:

> It shall be unlawful for any person—(2) falsely to represent such person to be a member of a contract market, or the representative or agent of such member, ... in soliciting or handling any order or contract for the purchase or sale of any commodity in interstate commerce or for future delivery, or falsely to represent in connection with the handling of any such order or contract that the same is to be or has been executed on, or by or through any member of, any contract market.

## IX.

■ Mr. Sanders argues that there was insufficient evidence that Mr. Dewey "handled" an order as required by 7 U.S.C. § 6h. The term "handled" is a term of art in the commodities trading business. Both the prosecution and the defense produced "expert testimony" on the meaning of the term, and the jury was adequately instructed on the issue. We find no cause to disturb the jury's finding.

## X.

Lastly, the defendant has challenged three of the district court's instructions to the jury. Mr. Sanders asserts that the district court improperly instructed the jury regarding the following matters: (a) on "handling", (b) on the wire fraud-related instructions; and (c) on the evidence of the guilty pleas. Each of these positions have already been addressed and rejected in other sections of this opinion.

Accordingly, the judgment of conviction is affirmed. The case is remanded to the district court for the correction of the sentence.