**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**James P. LeDONNE, Defendant–
Appellant.**

No. 93–1548.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 5, 1993.

Decided April 22, 1994.

Rehearing Denied July 25, 1994.

Andrew B. Baker, Jr., Asst. U.S. Atty., Dyer, IN, Ruth Hennage (argued), Office of U.S. Atty., South Bend, IN, for plaintiff-appellee.

Gregory K. Blanford, Laurie A. Bigsby, South Bend, IN, Shelly B. Kulwin (argued), Chicago, IL, for defendant-appellant.

Before COFFEY, FLAUM, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

James P. LeDonne appeals from the denial of his motion to withdraw his plea of guilty to wire fraud and bank fraud. LeDonne contends that the district court failed to inform him of the elements of either offense to which he pleaded guilty and that the record demonstrates an inadequate factual basis which cannot support his convictions. In essence, he argues that he pleaded guilty under the misconception that knowingly drafting checks on insufficient funds was enough to establish a scheme *to obtain money or property by means of false or fraudulent pretenses, representations, or promises*, under 18 U.S.C. § 1343 and § 1344 and therefore his plea was not knowingly and voluntarily made.

## I. BACKGROUND

### A. The Charges

Count I of the two-count information charged that LeDonne had "knowingly devised and intended to devise a scheme and artifice to defraud Walden Leasing and Walden Fleet Group and other dealerships, leasing companies and individual purchasers, of money and property by means of false and fraudulent pretenses, representations, and promises, while knowing that the pretenses, representations and promises were false when made" and had executed the scheme by use of telephone and telefax in violation of 18 U.S.C. § 1343. Count II charged LeDonne with having "knowingly devised a scheme and artifice to defraud Bank One, a financial institution, and to obtain monies and funds owned by and under the custody and control of Bank One by means of false and fraudulent pretenses, representations and promises" in violation of 18 U.S.C. § 1344.

### B. The Facts

The facts as summarized by the government at the plea hearing encompass two separate but related fraudulent schemes. Together these transactions formed the basis of the two-count information. LeDonne, a thirty-nine year old businessman, was the incorporator and manager of a number of distributing and leasing companies engaged in the business of buying and selling wholesale and retail vehicles to various leasing companies, dealers, and rental car companies. His position with the various companies authorized him to make deposits in and write checks on several bank accounts in order to manage the financial transactions involved in procuring and distributing vehicles. Between the months of February and July of 1991, LeDonne contacted various companies from his Elkhart, Indiana office, via telephone or telefax to place purchase orders for vehicles. Knowing that there were insufficient funds to pay for the vehicles, he would assure the sellers that he would provide cash payment in compliance with the purchase agreement. He would then submit payment in the form of an overdraft check and arrange to have the vehicles picked up on a Friday afternoon in order to prevent the seller from confirming whether sufficient funds were available before completing the transaction. When the sellers contacted LeDonne after discovering they had received insufficient funds checks, LeDonne provided ready excuses for the overdraft. He would then sell the vehicles to generate cash knowing, however, that he could not deliver title as the vehicles were not paid for because they had been purchased with overdraft checks. This scheme formed the basis of the charge of wire fraud.

As it became increasingly difficult to support this method of doing business, LeDonne devised a check kiting scheme utilizing various bank accounts throughout Indiana and Michigan. On one occasion, LeDonne owed an automobile dealership approximately $148,000. In an effort to cover the deficit, LeDonne opened an account with the Summit Bank in Indianapolis on May 10, 1991,

and had an associate open an account with Bank One in Elkhart, Indiana on May 15, 1991. LeDonne then wrote a $150,000 check on the Summit account to his associate for deposit in a separate pre-existing account at Bank One. His associate then transferred the funds to the new Bank One account and immediately began issuing checks from that account. By the time the check came back from Bank One there were insufficient funds in the Summit account to cover it. As a result of this scheme Bank One suffered a $98,000 loss and LeDonne was charged with bank fraud.

### C. The Entry of the Plea

Pursuant to a written plea agreement, Le-Donne entered a plea of guilty to the charges of bank fraud and wire fraud. At the plea hearing, the government proffered the evidence it would have produced on the statutory requirement for each count had the case proceeded to trial. The judge questioned the assistant U.S. Attorney during the presentation, focusing on elements of the offenses. The judge then asked defense counsel to question LeDonne, under oath, regarding the factual basis of the charges. After counsel finished his examination, the judge directly inquired of LeDonne whether he wished to plead guilty to both counts because of his admission that he committed the acts outlined in the information and orally recounted by the government. LeDonne assured the court that this was correct. The government then briefly summarized some additional facts relating to each count. Reading from the written plea agreement which LeDonne acknowledged having understood and signed, the court advised LeDonne again of the rights he was waiving by his plea, including the right to trial, the right to confront witnesses against him, and the right against

self-incrimination. LeDonne responded affirmatively when asked whether he understood that he was waiving these rights by pleading guilty. He acknowledged having been informed of the maximum possible penalties for the specific charges to which he entered his plea and about the process of sentencing under the Guidelines. After determining that no threats or promises were made to induce his plea, the court again asked LeDonne whether he wished to persist in his plea because he was in fact guilty of the conduct alleged. LeDonne responded affirmatively, and the court accepted the guilty plea and set the date for sentencing.

### D. The Motion to Withdraw the Plea

Prior to the sentencing hearing, Le-Donne acquired new counsel and moved to withdraw his plea as not knowingly and voluntarily made. Among other issues raised in his motion, LeDonne claimed that there was not a sufficient factual basis to establish that he intended to defraud either Walden Leasing Company or the bank and that the court failed to adequately advise him of the essential elements of both offenses.[1] Despite acknowledging that his plea of guilty was a tactical decision made in order to avoid more severe consequences, LeDonne argued that he did not harbor the intent to defraud as charged. The district court rejected this argument relying on the defendant's affirmative responses at the plea hearing that he was pleading guilty because he was in fact guilty, and denied the motion to withdraw. Memorandum and Order of Feb. 25, 1993, at 2–3. The court then proceeded to sentence LeDonne to sixty-three months' imprisonment to run consecutively to any state sentence. LeDonne appeals only the district court's denial of his motion to withdraw the plea.

---

**1.** The government argues that these grounds were raised only in a conclusory manner before the district court and therefore are waived absent plain error. Fed.R.Crim.P. 52(b); *see, e.g., United States v. Quintanilla,* 2 F.3d 1469, 1476 (7th Cir.1993). The core of LeDonne's motion was that his plea was not knowing and voluntary. One reason clearly presented in his motion was that he did not intentionally defraud Walden Leasing or Bank One. Defense counsel also argued, during the hearing on the motion to with-

draw, that there was an insufficient factual basis to support the crimes charged because there was no discussion of intent, an element of both wire fraud and bank fraud. Moreover, the district court's Memorandum and Order of February 25, 1993, identifies the defendant's challenge to the factual basis as one of the issues raised in support of withdrawal. There is therefore ample support in the record to conclude that both Rule 11 challenges were sufficiently preserved for appeal.

## II. DISCUSSION

We review the denial of a motion to withdraw a guilty plea within the framework of Federal Rules of Criminal Procedure 11 and 32. Rule 32(d) provides that "if a motion for withdrawal of a plea of guilty ... is made before sentence is imposed, the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason." A defendant, however, does not have an absolute right to withdraw his plea of guilty prior to sentencing. *United States v. Groll,* 992 F.2d 755, 758 (7th Cir.1993). Rather, the decision whether to allow withdrawal of a guilty plea is a matter within the sound discretion of the district court and we will reverse that decision only for an abuse of discretion. *Id.; United States v. Saenz,* 969 F.2d 294, 296 (7th Cir.1992). In reviewing the district court's decision, findings regarding whether the defendant has demonstrated a "fair and just reason" will be upheld unless they are clearly erroneous. *Saenz,* 969 F.2d at 296; *United States v. Ray,* 828 F.2d 399, 422 (7th Cir.1987), *cert. denied,* 485 U.S. 964, 108 S.Ct. 1233, 99 L.Ed.2d 432 (1988).

Rule 11 is designed to address the issues the district court must review in determining whether "a defendant's guilty plea is a voluntary and intelligent choice among the alternative courses of action open to him." *Saenz,* 969 F.2d at 296. A guilty plea taken without attention being given to the matters set forth in Rule 11 could constitute a "fair and just" reason justifying the request for withdrawal of a plea, and the denial of a motion to withdraw under such a circumstance would be an abuse of discretion. *Id.* Following the format of Rule 11 tends to ensure the accuracy of the plea and to enable a meaningful and expeditious review. *See, e.g., United States v. Price,* 988 F.2d 712, 719 (7th Cir.1993); *Ray,* 828 F.2d at 404. Yet the failure to comply with the strictures of the Rule is not necessarily fatal. *United States v. DeCicco,* 899 F.2d 1531, 1534 (7th Cir.1990) (citing *United States v. Frazier,* 705 F.2d 903, 906 (7th Cir.1983) (per curiam)). Rule 11(h) specifically provides: "Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded." Thus, "in reviewing Rule 11 proceedings, matters of reality, and not mere ritual should control," *Saenz,* 969 F.2d at 296, and "we should not give Rule 11 such a crabbed interpretation that ceremony is exalted over substance." *Ray,* 828 F.2d at 404 (citations omitted). We need only satisfy ourselves, by considering the total circumstances surrounding the plea, that the defendant was informed of his rights and understood the consequences of his plea. *See Price,* 988 F.2d at 719; *DeCicco,* 899 F.2d at 1534.

### A. Nature of the Offense and Factual Basis for the Plea

Unless the defendant understands the elements of the crime he is admitting, his plea cannot be said to have been knowingly and voluntarily entered. *United States v. Musa,* 946 F.2d 1297, 1303 (7th Cir.1991). To ensure that the defendant's guilty plea is knowing, Rule 11(c) requires that a federal court "inform the defendant of, and determine that the defendant understands, ... the nature of the charge to which the plea is offered." *See United States v. Seybold,* 979 F.2d 582, 586 (7th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2980, 125 L.Ed.2d 677 (1993). As we have stated in earlier cases the preferred—but not the required—method of satisfying Rule 11(c)(1) is for "the judge to explain the nature of the charge to the defendant either generally or with regard to the specific facts of the case." *Ray,* 828 F.2d at 405. There are, however, a number of techniques utilized by federal district judges to establish that the defendant understands the nature of the charge against him. Thus, rather than require literal compliance with Rule 11(c)(1) this court has adopted a totality of the circumstances approach to determine whether the defendant understood the charges to which he pled. *Id.* Under this approach, we consider the complexity of the charge, the defendant's level of intelligence, age and education, whether the defendant was represented by counsel, the judge's inquiry during the plea hearing and the defendant's statements, as well as the evidence proffered by the government. *Id.; Musa,* 946 F.2d at 1304.

We have also adopted a similar approach in reviewing the sufficiency of the factual basis for a guilty plea. *See Musa,* 946 F.2d at 1302. To ensure that the guilty plea has a basis in fact sufficient to constitute the alleged crime, Rule 11(f) provides: "Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea." Although the factual basis is generally supplied by the defendant's admissions, *United States v. Frye,* 738 F.2d 196, 199 (7th Cir.1984), "Rule 11(f) does not require the district judge to engage in a colloquy with the defendant to establish a factual basis for a guilty plea. A judge may find the factual basis from anything that appears on the record, which includes the government's proffer." *Musa,* 946 F.2d at 1302 (citation omitted); *see also United States v. Ivory,* 11 F.3d 1411, 1415 (7th Cir.1993) ("Rule 11 does not distinguish between factual material supplied by the defendant and that supplied by the prosecutor"). "Thus a sufficient factual basis can be found even when the court engages in the most rudimentary questioning of the defendant if the indictment and statement of the prosecution's evidence are sufficiently specific to make clear to the defendant exactly what is being admitted." *Ray,* 828 F.2d at 406 (citations omitted).

The district court did engage LeDonne in a limited colloquy regarding his admission of relevant facts. The court also inquired and received LeDonne's acknowledgment that he had read the information and discussed it with his attorney. When asked by the court whether he had any difficulty understanding the charges, LeDonne responded that he did not. Generally a defendant's independent prior reading of the charges is considered inadequate to ascertain whether he understood the nature of the charges except in the simplest cases, *Ray,* 828 F.2d at 410, but the effort to determine whether LeDonne's plea was knowing was not so limited in this case. The district court directed the assistant U.S. Attorney to explain the government's theory as to each count and to state the evidence it would offer to support those charges. Instead of directly questioning LeDonne to determine if he agreed with the facts as proffered by the government, the court requested that defense counsel examine LeDonne about the facts which formed the basis of his criminal conduct.

 District judges throughout this circuit—and indeed throughout the federal system—have used their experience and the guidance of Rule 11 in developing methods to insure that guilty pleas tendered to them are voluntarily and knowingly and intelligently made. With regard to the matters under discussion here, two procedures have proved particularly successful in achieving the requisite degree of certainty required. Utilizing the prosecutor at a plea hearing to identify for the defendant the elements of the offense charged, followed by inquiry of the defendant by the judge confirming the defendant's understanding of the elements is an effective method for determining that the defendant understands "the nature of the charge to which the plea is offered." Further requiring the government's prosecutor at a plea hearing to orally recount in relevant detail the facts which satisfy the elements of the offense charged, followed by questions from the judge posed to the defendant to confirm the defendant's admission of those facts also is a highly useful method to establish that the defendant has committed a charge to which defendant has pled guilty.

 The procedure used in this case to inform the defendant of the elements of the offenses charged and the presentation of the relevant facts supporting those charged offenses was somewhat similar to the procedure outlined above. Here, however, the government did not separately describe the statutory elements and then proceed with a proffer of the facts. Rather, the facts which constituted the elements of the offense were presented by the government with an occasional clarification and highlighting by the judge. With regard to the procedure used for obtaining the defendant's admission of the relevant facts, that task was delegated to defense counsel. The defendant was placed under oath and examined by his counsel regarding the facts relevant to the charged offenses. Both procedures utilized in this case have potential pitfalls, but as the follow-

ing discussion indicates, we believe that the district court judge's efforts, when coupled with LeDonne's ability to understand the nature of the charges, renders the district court's practice sufficient under Rule 11(c).

## B. Bank Fraud

■ LeDonne argues that the court erred in accepting his plea because the factual basis presented at the plea hearing which suggested that he had *obtained money or property by means of false or fraudulent pretenses* by engaging in check kiting[2] is legally insufficient. The bank fraud statute under which LeDonne was convicted prohibits two distinct but related types of conduct:

> Whoever knowingly executes, or attempts to execute, a scheme or artifice—
>
> (1) to defraud a financial institution; or
>
> (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representation, or promises;
>
> shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1344 (Supp.1993). Although largely overlapping, a scheme to defraud and a scheme to obtain money by false or fraudulent pretenses are defined in the disjunctive, and thus are separate offenses. *See, e.g., United States v. Doherty,* 969 F.2d 425, 427 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 607, 121 L.Ed.2d 542 (1992). In applying the disjunctive analysis to bank fraud, courts have required proof of a misrepresentation only to convict for a violation of § 1344(2). *E.g., United States v. Ragosta,* 970 F.2d 1085, 1089 (2d Cir.) (collecting cases), *cert. denied,* —— U.S. ——, 113 S.Ct. 608, 121 L.Ed.2d 543 (1992). A conviction under subsection (1), on the other hand, re-

quires proof only of a recognizable scheme formed with the intent to defraud a financial institution. *Id.; United States v. Frankel,* 721 F.2d 917, 920 (3d Cir.1983).

■ The information charged LeDonne with violations of both § 1344(1) and (2), but described a fraudulent scheme consisting of a bare check kiting operation unembellished by other acts or communications, which offended only subsection (1). In its proffer, however, the government stated that "LeDonne executed the scheme and artifice in order to defraud *and* to obtain money and funds by means of false pretenses, representations and promises, when he was the maker of check number 2002 … a check that he knew was drawn on insufficient funds." (Emphasis added). By stating a factual premise that he had obtained money by means of false pretenses, LeDonne claims he was erroneously led to believe that merely drafting insufficient fund checks constitutes a fraudulent representation. We agree that such a belief is clearly wrong. *See Doherty,* 969 F.2d at 427–29. According to LeDonne there is no indication in the record that he understood the charge to be otherwise, nor any admission of intent to defraud. Although LeDonne does not appear to dispute that he engaged in check kiting, he argues that merely presenting worthless checks does not constitute a false representation and thus cannot form the basis of bank fraud as charged.

■ We know from *Williams v. United States,* 458 U.S. 279, 284–85, 102 S.Ct. 3088, 3091–92, 73 L.Ed.2d 767 (1982), and its progeny that the drafting and deposit of an overdraft check does not constitute a "false statement" because technically speaking a check does not "make any representation as to the state of an account holder's bank balance." *Doherty,* 969 F.2d at 427. Rather, it is merely "an order to the drawee bank to pay a sum certain to the holder." *Id.* It follows there-

---

**2.** Check kiting involves the knowing drafting and depositing of a series of overdraft checks between two or more federally insured banks with the purpose of artificially inflating bank balances so that checks can be drawn on accounts that actually have negative funds. *United States v. Doherty,* 969 F.2d 425, 428 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 607, 121 L.Ed.2d 542 (1992). If timed correctly, the bank will be

prevented from discovering that the accounts are overdrawn and will be tricked into honoring checks drawn on accounts with insufficient funds. *Id.; see also United States v. Frydenlund,* 990 F.2d 822, 824 (5th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 337, 126 L.Ed.2d 281 (1993). By repeating this scheme over a period of time a person in essence may obtain an interest-free loan.

fore that absent other acts or communications of misrepresentation, knowingly drafting and depositing overdraft checks is not an offense under § 1344(2), which prohibits schemes accomplished "by means of false or fraudulent pretenses, representation, or promises." *Id.* at 428. If no misrepresentation is made under § 1344(2) merely by passing worthless checks then, LeDonne argues, there is nothing left in a bare check kiting operation to establish the fraudulent intent necessary for a scheme to defraud in violation of § 1344(1). Implicit in this argument is that proof of a misrepresentation or false pretense is an element inherent to establishing a "scheme to defraud." However, this argument is clearly foreclosed by *Doherty*. Doherty had engaged in a check kiting scheme to raise capital to invest in the stock market. The investment proved risky and resulted in a loss of over $96,000 to the bank and criminal charges under 18 U.S.C. § 1344 for Doherty. Premised on *Williams*, Doherty argued that one cannot execute a scheme to defraud without making a false statement or misrepresentation of fact because "a false representation or promise is the *sine qua non* of a 'scheme to defraud' under § 1344(1); [and thus], under *Williams*, check kiting is no more a crime under § 1344(1) than it is under § 1344(2)." *Doherty*, 969 F.2d at 429.

The term *scheme to defraud*, however, was broadly conceived to include conduct designed to deceive in order to obtain something of value, which contrary to the defendant's position, may or may not include conduct involving false statements or misrepresentations of fact. *Id.*; *United States v. Hammen*, 977 F.2d 379, 383 (7th Cir.1992); *Ray*, 828 F.2d at 408 n. 8. The aim of the statute is "to punish the scheme to defraud rather than the end result." *United States v. Sanders*, 893 F.2d 133, 138 (7th Cir.), *cert. denied*, 496 U.S. 907, 110 S.Ct. 2591, 110 L.Ed.2d 272 (1990). Put another way, the focus of the offense of a "scheme to defraud" is on the "intended end result, not on whether a false representation was necessary to effect the result." *United States v. Cronic*, 900 F.2d 1511, 1513 (10th Cir.1990). Thus it matters not whether the fraudulent scheme was accomplished by an affirmative misrepresentation nor whether the fraud succeeded and the victim deceived. *See Sanders*, 893 F.2d at 138; *accord United States v. Goldblatt*, 813 F.2d 619, 624 (3d Cir.1987); *United States v. Solomonson*, 908 F.2d 358, 364 (8th Cir.1990). As long as the scheme was devised with the intent to defraud, how that intent manifests itself in execution is irrelevant. *See Frankel*, 721 F.2d at 920. Because direct evidence of a defendant's fraudulent intent is typically not available, specific intent to defraud may be established by circumstantial evidence and by inferences drawn from examining the scheme itself which demonstrate that the scheme was reasonably calculated to deceive persons of ordinary prudence and comprehension. *Ragosta*, 970 F.2d at 1090 (citing *United States v. Celesia*, 945 F.2d 756, 760 (4th Cir.1991)); *Schreiber Distrib. Co v. Serv–Well Furniture Co.*, 806 F.2d 1393, 1400 (9th Cir.1986) (citing *United States v. Green*, 745 F.2d 1205, 1207 (9th Cir.1984), *cert. denied*, 474 U.S. 925, 106 S.Ct. 259, 88 L.Ed.2d 266 (1985)); *United States v. Clausen*, 792 F.2d 102, 105 (8th Cir.), *cert. denied*, 479 U.S. 858, 107 S.Ct. 202, 93 L.Ed.2d 133 (1986). As such, the execution of the scheme may be relevant to establishing the defendant's specific intent to defraud.

Focusing on whether the execution of a scheme to defraud exhibited an intent to defraud rather than on false statements or misrepresentations of fact, we held in *Doherty* that § 1344(1) "unambiguously encompasses bare check kiting schemes." 969 F.2d at 429. In so holding we joined a number of circuits that have interpreted § 1344(1) to incorporate bare check kiting as a form of bank fraud. *Id.*; *United States v. Stone*, 954 F.2d 1187, 1189–91 (6th Cir.1992); *United States v. Fontana*, 948 F.2d 796, 802 (1st Cir.1991); *United States v. Celesia*, 945 F.2d 756, 758–59 (4th Cir.1991); *United States v. Schwartz*, 899 F.2d 243, 246–47 (3d Cir.), *cert. denied*, 498 U.S. 901, 111 S.Ct. 259, 112 L.Ed.2d 217 (1990); *United States v. Bonnett*, 877 F.2d 1450, 1454–56 (10th Cir.1989); *see also United States v. Frydenlund*, 990 F.2d 822, 824 (5th Cir.1993); *United States v. Sayan*, 968 F.2d 55, 61 n. 7 (D.C.Cir.1992) (collecting cases).

■ Here the information which charged LeDonne tracked the language of both provisions of the bank fraud statute, as did the government's identification of the offense during its proffer. Because proof of an affirmative misrepresentation is an element necessary only to convict under § 1344(2) use of the *false pretenses* language by the government might have blurred the elements of the offense, and possibly confused LeDonne's understanding of the charge. However, where a statute defines two or more ways in which an offense may be committed, all may be alleged in the conjunctive in one count in order to adequately apprise the defendant of the government's intention to charge him under either prong of the statute. *E.g., Fontana,* 948 F.2d at 801. And proof of any one of those acts conjunctively charged may support a conviction. *Stone,* 954 F.2d at 1192; *Celesia,* 945 F.2d at 758–59; *United States v. Bonanno,* 852 F.2d 434, 441 (9th Cir.1988), *cert. denied,* 488 U.S. 1016, 109 S.Ct. 812, 102 L.Ed.2d 801 (1989); *Clausen,* 792 F.2d at 104–05. The government's case rested entirely on the passing of worthless checks rather than on separate acts of misrepresentation. Thus, even though both subsections of the statute were identified, the government was not required to prove the elements of both sections to support a conviction for bank fraud.[3] Any reference to *false or fraudulent pretenses, representations, or promises* was therefore unnecessary since the evidence supported a bare check kiting scheme prohibited under § 1344(1).

■ Another point of potential confusion arose during defense counsel's questioning regarding bank fraud when he asked LeDonne whether the overdraft checks issued from the Bank One account "allowed [him] to obtain either titles or pay for cars that [he] had in [his] possession or had in [his] possession previously." However, what the checks were being used for is irrelevant. Rather, for purposes of bank fraud under subsection (1), only proof that they were knowingly drafted on insufficient funds is required to establish fraudulent intent. Notwithstanding this, LeDonne admitted full knowledge of the check kiting scheme. When viewed in the totality of the circumstances these discrepancies in defining the elements of the bank fraud charge had relatively minor impact.

■ As a college graduate, who held a responsible position requiring considerable sophistication, LeDonne's ability to comprehend the nature of the charges does not appear to be in doubt. By signing the written plea agreement, LeDonne acknowledged that he had read a copy of the information, discussed it with his lawyer, and "understood every accusation made against [him] in the case." LeDonne's admissions coupled with the government's proffer and his apparent ability to understand the charges he faced is persuasive support for finding that LeDonne was adequately advised of the nature of the offense.

■ LeDonne next contends that the factual basis is inadequate because there was no evidence that he admitted an intent to defraud. According to LeDonne, even if check kiting can form the basis of bank fraud, the use of an overdraft check still does not constitute a false representation, and thus mere reliance on the passing of a worthless check is not alone sufficient to establish an intent to defraud. Had the evidence showed only the simple presentation of an insufficient funds check, this might be true. But a scheme to defraud based on a check kiting operation is distinguishable from inadvertently passing a check drawn on insufficient funds. LeDonne has not disputed that he engaged in the practice of floating checks, and so appears to have conceded the sufficiency of the factual basis to support a conviction under § 1344(1). Even absent a concession, there is clear support in the record that a sufficient factual basis was established in compliance with Rule 11(f).

■ To sustain a conviction for bank fraud under § 1344(1) based on a check kiting scheme, the government is required to prove beyond a reasonable doubt that the

---

**3.** The government insists that it was clear to all at the time of the plea hearing that LeDonne did not violate § 1344(2). Any reference to misrepresentations, the government argues, was prof-

fered only to provide a background in order to "sufficiently explain" the circumstances behind LeDonne's scheme to defraud the bank under § 1344(1).

defendant engaged in or attempted to engage in a pattern or course of conduct designed to deceive a financial institution with intent to cause actual or potential loss. *Ragosta*, 970 F.2d at 1089. The facts established at the plea hearing meet this requirement. LeDonne engaged in a scheme in which he deposited a check drawn on insufficient funds into a separate account, thereby artificially inflating the balance, and then wrote checks on that account when he knew there were insufficient funds to cover them. Specifically, the government's proffer detailed that LeDonne opened an account with Summit Bank in Indianapolis on May 10, 1991, and drafted a $150,000 check (LeDonne recalled a check of between $148,000–$150,000) to be deposited into a pre-existing account at Bank One in Elkhart. On May 15, 1991, LeDonne had an associate, Paul McClure, open a new account at Bank One in the name of J.P. Distributing and transfer the $150,000 to the new Bank One account. LeDonne began issuing checks on the new account almost immediately, knowing that the account had been artificially inflated because there were insufficient funds in the Summit Bank account to cover the $150,000 check. By the time the $150,000 check was presented for payment at Summit Bank there were, in fact, insufficient funds and Bank One lost approximately $98,000.

▬▬▬ When asked directly by counsel, LeDonne responded that he knowingly deposited an insufficient funds check with the intent of artificially inflating the balance in the Bank One account and immediately wrote overdraft checks from that account before the original deposit cleared the Summit Bank.[4] When entering a guilty plea, a defendant's voluntary responses made under oath

in open court carry a strong presumption of veracity. *Seybold*, 979 F.2d at 587–89 (citing *United States v. McFarland*, 839 F.2d 1239, 1242 (7th Cir.), *cert. denied*, 486 U.S. 1014, 108 S.Ct. 1750, 100 L.Ed.2d 212 (1988), and *United States v. Darling*, 766 F.2d 1095, 1101 (7th Cir.), *cert. denied*, 474 U.S. 1024, 106 S.Ct. 579, 88 L.Ed.2d 561 (1985)). In fact, "[t]he only rational manner in which a judge may determine whether a plea is knowingly and voluntarily made, is to observe the defendant's demeanor and responses to the court's questions and to rely on the defendant's sworn answers." *Id.* at 587 (quoting *United States v. Ellison*, 835 F.2d 687, 693 (7th Cir.1987)). We may infer from LeDonne's responses to counsel's questions, combined with the government's statement of the evidence, that LeDonne knew the checks were not backed with sufficient funds. Coupled with the manner in which the banking transactions were carried out—utilizing three different accounts with checks issued immediately upon deposit—there is enough to establish an intent to trick the bank into honoring checks drawn on an artificially inflated account. The execution of the scheme therefore provides sufficient evidence to establish an adequate factual basis of LeDonne's intent to defraud.

## C. Wire Fraud

With respect to the charge of wire fraud, LeDonne argues that he was operating under "the misconception that the nature of the offense of wire fraud necessarily included an element that at the time he used the telefax there was insufficient funds in his checking account." He argues that there is no other indication in the record that he admitted to use of a wire transmission to obtain money or

---

4. Counsel: At the time you wrote that check, Mr. LeDonne, you were aware there were insufficient funds in that account; am I correct?

 LeDonne: That's correct.

 Counsel: And you gave this check to Mr. McClure knowing there was insufficient funds and Mr. McClure then addressed other obligations of the entity from a Bank One account; is that correct?

 LeDonne: That's correct.

 . . . .

 Counsel: Again you and Mr. McClure, or at least speaking from your point of view, knew that

the checks were not going to clear the Summit Bank and, as a consequence, the Bank One account?

 LeDonne: I would like to confer with my counsel.

 The Court: All right.

 Counsel: Mr. LeDonne, at the time you issued the check to Mr. McClure, you knew that that check was not going to clear Summit Bank, is that correct, there was insufficient funds in that account?

 LeDonne: At that particular time, that's correct.

property by means of false or fraudulent pretenses, as is required to prove wire fraud.

■ The wire fraud statute under which LeDonne was charged states:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writing, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

18 U.S.C. § 1343. Like bank fraud, it requires proof of an intent to defraud, which likewise, may be established by circumstantial evidence and by inferences drawn from the facts and circumstances surrounding the scheme. *See, e.g., Clausen,* 792 F.2d at 105; *cf. Ragosta,* 970 F.2d at 1090 (bank fraud). *See generally United States v. Draiman,* 784 F.2d 248, 254 (7th Cir.1986) (wire fraud is a specific intent crime).

■ The government's proffer began with: "Mr. LeDonne knowingly devised and intended to devise a scheme and artifice to defraud not only Walden Leasing and Walden Fleet Group but also other dealerships, leasing companies and individual purchasers of money and property by means of false and fraudulent pretenses, representations and promises, knowing that those pretenses, rep-

resentations and promises were false when made." The fraudulent representation shown was the ordering of vehicles knowing that the representation made regarding payment was false. Specifically, the government stated that in furtherance of the scheme, LeDonne would assure the sellers that there were sufficient funds to pay for the vehicles by agreeing to send cash or a certified check in compliance with the purchase agreement.[5] However, instead he would dispatch drivers to pick up the vehicles on a Friday, sending along as payment a check knowingly drawn on insufficient funds. The late Friday pick-up was critical to the scheme because it prevented the seller from verifying the sufficiency of the funds with the bank before completing the transaction. Use of the "knowing" and "in furtherance" language by the prosecution refers to LeDonne's attempt to gain the sellers' confidence in order to induce the release of vehicles. Language of this type is considered sufficient to explain the intent element of the offense to the defendant. *See Ray,* 828 F.2d at 409.

■ Evidence that LeDonne understood the element of intent is clear from his response during his examination by counsel. LeDonne admitted under oath that he faxed the purchase orders with the intent to induce Walden Leasing to provide vehicles, knowing at the time that he did not have sufficient funds to satisfy payment.[6] In fact because he knew he could not comply with the terms of the purchase agreement, he arranged to have the vehicles picked up on Friday after-

5. The government proffered: "[I]n furtherance of the scheme, Your Honor, on or about March 21st, Mr. LeDonne, operating under the name J.P. Distributing, and for the purpose of executing this scheme, caused to be transmitted in interstate commerce by means of a wire and telephone communication, in other words, the facsimile, between Elkhart, Indiana, and the facsimile machine of Walden Leasing in Florida." Plea Tr. at 7. "Mr. LeDonne, during this scheme, would indicate that he had funds to pay for these vehicles; he was generally indicating he had cash funds and would be paying for them by certified check." *Id.* at 6.

6. Counsel: What sort of documents would you use the facsimile machine for specifically with Walden Leasing in Florida?

LeDonne: Walden Leasing would fax me on one side of a document a list of vehicles with VIN numbers, colors, mileage and condition and

price, and that list of vehicles would be shipped as soon as the vehicles—as soon as that purchase order was signed and faxed back to Walden Leasing.

Counsel: And you knew at that time on some occasions, in some instances, that you did not have the funds to pay for those vehicles that were being released; is that correct?

LeDonne: That's correct.

Counsel: And you utilized the facsimile machine not only to authorize purchase agreements or transmit purchase agreements, but you also utilized the facsimile machine in a knowing and intentional manner to induce Walden Leasing to release vehicles to you and your corporations?

LeDonne: That's correct.

Counsel: And at that time you, again, were aware that there were insufficient monies to pay for those vehicles at the time of your signing the purchase agreements; is that correct?

LeDonne: Let me confer.

noons in order to conceal the fact that an overdraft check had been submitted as payment. Misrepresenting his financial ability to pay for the vehicles at the time of receipt was fraud. Proof that there were insufficient funds at the time of transmitting the purchase orders and prearranging to take possession of the vehicles when the seller would be unable to verify payment is key to establishing knowledge of his financial wherewithal, which in turn is essential to establishing deliberate misrepresentation. *See, e.g., Bontkowski v. United States,* 850 F.2d 306, 314 (7th Cir.1988) (discussing *United States v. Bruun,* 809 F.2d 397 (7th Cir.1987) for the proposition that proof of knowledge is a necessary element of the offense of bank fraud). But it is not the fact of insufficient funds nor the giving of an overdraft check which constitutes a fraudulent misrepresentation. Rather the fraud lies in intentionally misrepresenting his financial ability, and was furthered by elaborate efforts to conceal awareness of the insufficiency.

■ After unsuccessfully negotiating the checks, the sellers contacted LeDonne, who responded to their concerns with ready excuses for the overdrafts. Communications which occur after the defendant has obtained the victims' money or property are in furtherance of the fraudulent scheme if they facilitate concealment or postpone investigation of the scheme. *Sanders,* 893 F.2d at 138; *United States v. O'Connor,* 874 F.2d 483, 486 (7th Cir.1989). Avoidance of detection is often a material part of a fraudulent scheme; for an illegal scheme would hardly be undertaken were there to be no profit to the plotters. *O'Connor,* 874 F.2d at 486 (citing *United States v. Riedel,* 126 F.2d 81, 83 (7th Cir.1942)). Attempting to lull the sellers by offering various false explanations for the overdraft is evidence of LeDonne's effort to prevent detection of his scheme and provides further support of his fraudulent intent. In sum, LeDonne's plan, the success of which required carefully orchestrated execution, provides persuasive evidence of his knowledge of wrongdoing, and permits finding a sufficient factual basis for intent to commit wire fraud.

Finally, the court inquired of LeDonne whether he still wished to plead guilty following the government's proffer and after direct questioning by defense counsel. The judge inquired: "You are pleading guilty here after conferring thoroughly and carefully with your lawyer; is that correct?" LeDonne responded: "That's correct, your Honor." The judge further queried: "Your pleading guilty to both counts because you're, in fact, guilty of doing ... the essential facts that are alleged in that case?" Again LeDonne responded: "That is very correct, your Honor." Later the court again asked: "[T]he long and short of it is, with all of this said and done, Mr. LeDonne, you're still pleading guilty of Count I and II of this information? ... Because you're, in fact, guilty?" To this the defendant responded: "That's correct, Your Honor." Turning to defense counsel, the judge inquired if counsel could state to the court that the defendant understood the nature of the charges and the penalties, and was freely, voluntarily, and intelligently entering his plea of guilty to the charges. Assuring the court that he had conferred at some length with LeDonne, counsel represented that the plea was knowing and voluntary. Although a limited exchange with the court, when taken with the government's proffer and LeDonne's responses to counsel's questioning, we think the record provides a sufficient basis to conclude that the requirements of Rule 11(c) were met and that LeDonne was adequately advised of the nature of the offenses of bank fraud and wire fraud and that the factual basis established adequately demonstrates his intent to defraud as to both counts.

### III. CONCLUSION

Because we find no abuse of discretion in denying LeDonne's motion to withdraw his plea, the judgment of the district court is

AFFIRMED.

The Court: Certainly.
LeDonne: My answer to his question is yes, that's correct.