In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2500

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MELODIE KIPTA,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 97 CR 638--Milton I. Shadur, Judge.

Argued December 7, 1999--Decided May 18, 2000

Before HARLINGTON WOOD, JR., RIPPLE, and ROVNER,
Circuit Judges.

HARLINGTON WOOD, JR., Circuit Judge. Defendant-
appellant Melodie Kipta pled guilty to one count
of bank fraud in violation of 18 U.S.C. sec.
1344. She was sentenced to 27 months
imprisonment. On appeal, Kipta challenges the
district court's determination of her sentence,
arguing that the district court erred in
calculating the amount of loss attributable to
her fraudulent conduct.

I.   BACKGROUND

In 1996, Kipta maintained two bank accounts,
one at the Loyola University Employees' Credit
Union ("Loyola") and a second joint account with
her husband at the First National Bank of Chicago
("First Chicago"). On July 19, 1996, Kipta wrote
a check for $46,355.46 on her Loyola account and
deposited it into the First Chicago account. On
July 25, Kipta wrote a check for $20,000.00 on
the Loyola account and deposited it into the
First Chicago account. Because she did not have
funds in the Loyola account to cover these
checks, Kipta arranged for a fraudulent letter to
be faxed to First Chicago on July 29. The letter,
which was printed on Loyola Credit Union
letterhead, stated that Kipta was a customer in
good standing at the credit union, that she had
$800,000.00 in funds available, and that First
Chicago should have no concerns regarding the

deposits by Kipta or any subsequent withdrawals.

On July 30, 1996, Kipta wrote a check for $60,000.00 on her Loyola account and deposited it into the First Chicago account. Finally, on August 15, Kipta deposited a check written on her Loyola account for $45,000.00 into the First Chicago account and, that same day, attempted to obtain a First Chicago cashier's check in that amount. At no time during this period did Kipta have more than $600.00 in her Loyola account. Nevertheless, between July 17 and August 6, 1996, Kipta and her husband wrote eight checks on the First Chicago account for withdrawals totaling $39,500.00. First Chicago honored these checks based on Kipta's fraudulent deposits. The total actual loss to First Chicago as a result of Kipta's scheme was $38,219.92.

On September 10, 1997, based on the facts outlined above, Kipta was indicted by a grand jury on five counts of bank fraud in violation of 18 U.S.C. sec. 1344. On January 30, 1998, Kipta pled guilty pursuant to a written plea agreement to one count of bank fraud. On July 13, 1998, Kipta appeared before Judge Shadur on a superseding written plea agreement, entering a plea of guilty to one count of bank fraud and admitting to additional offenses as stipulated conduct. The stipulated conduct involved a scheme, perpetrated during September 1997, in which Kipta defrauded one of her employers by stealing and forging checks.

Kipta was sentenced on July 7, 1999. At sentencing, Kipta challenged the probation officer's amount of loss determination, arguing that she should be held liable only for the actual loss to First Chicago, $38,219.92, and not for the total amount deposited into the First Chicago account, a sum of $171,355.46. The district court found that Kipta's case did not parallel a check-kiting situation in which the total amount of deposits is never at risk due to the necessity of maintaining the float. The court adopted the probation officer's recommendation and based Kipta's amount of loss on a total intended loss to First Chicago of $171,355.46. Given this finding, the district court increased Kipta's offense level by seven levels under sec. 2F1.1(b)(1)(H) of the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G.")/1 and assigned Kipta a total offense level of 17. Kipta scored a criminal history category II, resulting in a Guidelines range of 27 to 33 months imprisonment. The district court sentenced Kipta to 27 months imprisonment followed by a five-year term of supervised release and ordered her to pay $38,219.92 in restitution to First Chicago and a $100.00 special assessment. Kipta

appeals.

II. ANALYSIS

   Kipta argues that the district court erred in holding her liable for an amount of loss greater than the actual loss suffered by First Chicago. Under U.S.S.G. sec. 2F1.1(b)(1), a defendant's base offense level in a fraud case is enhanced based on the amount of loss involved. While the district court's assessment of the amount of loss is a factual finding which we review under a clearly erroneous standard, the meaning of loss under sec. 2F1.1(b)(1) is a legal determination which we review de novo. United States v. Saunders, 129 F.3d 925, 929 (7th Cir. 1997).

   Kipta asserts that the district court erroneously analyzed her conduct as a fraudulent loan offense rather than as a check-kiting scheme. Kipta contends that she should be held liable only for the $38,219.92 actual loss to First Chicago and not for the remaining funds which, while fraudulently deposited, were never withdrawn. However, as we have noted, "in all fraud cases, Application Note 7 [to sec. 2F1.1] requires district courts to increase a defendant's offense level based on the greater value of either the actual loss suffered by the victims of the fraud or the intended . . . loss which the defendant attempted to inflict on the victims." Saunders, 129 F.3d at 930; see also U.S.S.G. sec. 2F1.1, comment. (n.7) ("[I]f an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss."). Kipta's actions are analogous to the conduct we examined in United States v. Strozier, 981 F.2d 281 (7th Cir. 1992). As was the case in Strozier, Kipta's scheme was not based on a float in which checks are circulated back and forth between two accounts, a situation which limits the amount available for withdrawal and the corresponding risk of loss. Instead, Kipta used the fraudulent letter and checks she knew would bounce to inflate the balance only in the First Chicago account and then caused checks to be drawn against this inflated balance. The district court did not err in basing Kipta's amount of loss calculation on the value of the intended, rather than the actual, loss.

   Having determined that the district court's sentencing calculations were based on a proper interpretation of sec. 2F1.1(b)(1), we turn to the district court's assessment of the amount of the intended loss. We find that the district court's determination that Kipta intended to defraud First Chicago out of the entire $171,355.46 was not clearly erroneous. The

fraudulent letter that Kipta used to back her deposits stated that she had reserves of $800,000.00, an amount more than sufficient to cover the deposits into the First Chicago account. There was nothing to limit the amount of funds available for withdrawal, and the corresponding potential for loss by First Chicago, to less than the total amount deposited into the account. See United States v. Yusufu, 63 F.3d 505, 513 (7th Cir. 1995) (holding that the amount that a defendant made available to himself by way of fraudulent deposits demonstrated the amount of loss intended); see also United States v. Bonanno, 146 F.3d 502, 509-10 (7th Cir. 1998) ("[T]he relevant inquiry is not 'How much would the defendants probably have gotten away with?', but, rather, 'How many dollars did the culprits' scheme put at risk?'."). Furthermore, it is undisputed that Kipta unsuccessfully attempted to negotiate her final deposit of $45,000.00 into a cashier's check. These facts support the district court's conclusion that Kipta intended to withdraw the entire amount deposited. Kipta's claim of error fails.

III. CONCLUSION

Kipta's sentence is affirmed.

/1 Section 2F1.1(b)(1)(H) provides for a seven-level enhancement in offense level for cases in which the amount of loss is greater than $120,000.00 but less than $200,000.00.