In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2665

United States of America,

Plaintiff-Appellee,

v.

Donald M. Higgins,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Indiana, Evansville Division.
No. EV 99 15 CR 01--Richard L. Young, Judge.

Argued December 1, 2000--Decided September 26, 2001


  Before Posner, Diane P. Wood, and Williams,
Circuit Judges.

  Diane P. Wood, Circuit Judge.  From March
to the end of May 1999, Donald Higgins
carried out an elaborate scheme to
defraud several banks, a car dealer, and
others along the way. Caught red-handed
in Jacksonville, Illinois, with two cars
he had obtained with the bad checks, he
wound up facing one charge of bank fraud
in violation of 18 U.S.C. sec. 1344, to
which he pleaded guilty. At the initial
sentencing hearing, the district court
imposed a sentence of 51 months in
prison. Higgins appealed, but before this
court heard his appeal, the government
moved to remand the case for
resentencing. The remand was granted. At
this second sentencing hearing, Higgins
moved for the first time to withdraw his
guilty plea. The district court denied
the motion on the ground that the limited
nature of the remand did not permit
consideration of the issue, but it
reduced Higgins's sentence to 41 months.
Higgins now reasserts on appeal the
argument that his guilty plea lacked an
adequate factual basis and should have
been set aside, and he attacks the new
sentence. We find no error in the
district court's refusal to set aside the
plea, but we agree with Higgins that the
computation of the loss attributable to
his scheme--crucial to the computation of
the sentence--requires further attention.

I

Higgins began his scheme in March of 1999 by opening a bank account at Civitas Bank in Evansville, Indiana, under the name of E&S Enterprises. On April 16, 1999, Civitas closed the account because it had a negative balance and unpaid service fees of nearly $400. Civitas notified Higgins that his account had been closed.

One month after the closure of the account, on May 17, 1999, Higgins went to Kenny Kent Lexus and expressed interest in buying two used Lexus automobiles. The dealership agreed to sell them to him for $69,900. Higgins gave the dealership a check in that amount drawn on the closed Civitas account. Perhaps anticipating Kenny Kent's inevitable discovery that the account was closed, Higgins asked the dealer to hold the check because he was selling E&S Enterprises, closing the Civitas account, and taking his banking business to Old National Bank of Evansville (ONB); he promised to replace that check with another one drawn on the Evansville bank. Kenny Kent agreed to do so, and, to its later regret, allowed Higgins to take one of the cars with him that day.

The next morning, Higgins went to ONB and asked to speak to the bank manager about opening a checking account. Higgins explained that he was dissatisfied with the service he had been receiving at Civitas and wanted to bring his banking business to ONB. As the initial deposit for his ONB account, Higgins presented the bank manager with a $420,000 check drawn on the closed E&S account at Civitas. The manager began preparing the documents to open the account while Higgins took the check to one of the tellers. The teller processed the check and gave Higgins a deposit slip indicating a $420,000 deposit. Higgins also received temporary checks for his new account.

With this false evidence of substantial wealth in hand, Higgins left ONB and returned to Kenny Kent. He showed the dealer the $420,000 deposit slip and wrote out a new check for $69,990. Kenny Kent accepted the check and delivered the second car to Higgins on the spot.

Meanwhile, back at ONB, the branch manager had checked with Civitas about Higgins's check and discovered that there were no funds to cover it. ONB immediately stopped processing Higgins's account application.

Kenny Kent got the news that Higgins's check was bad on May 21, 1999, and it promptly reported the fraud and the theft of the cars to the police. Three days later, the police caught up with Higgins in Jacksonville, Illinois. The trail must not have been too hard to follow: they found him there because the Holiday Inn where he was staying had reported that he used a worthless check drawn on yet another account, the First Bank of Jacksonville, to pay his lodging bill. Both Lexuses were still in the hotel's parking lot. He was arrested and later indicted on one count of bank fraud against ONB, in violation of 18 U.S.C. sec. 1344, and one count of interstate transportation of stolen motor vehicles, in violation of 18 U.S.C. sec. 2312. In exchange for Higgins's agreement to plead guilty to the bank fraud charge, the gov ernment dropped the interstate transportation charge.

Higgins entered his guilty plea on October 19, 1999. The district court accepted the plea after conducting the usual inquiry under Fed. R. Crim. P. 11, which included an inquiry designed to ensure that there is an adequate factual basis for the plea. See Fed. R. Crim. P. 11(f). In fact, Higgins had stipulated to the facts underlying his plea in the plea agreement. The district court sentenced him to 51 months, in part based on its conclusion that the loss attributable to Higgins's scheme was the full value of the bad check he deposited at ONB, that is, $420,000. The court's later reduction of the sentence to 41 months was based on unrelated considerations and did not reflect any change in this loss calculation. Higgins now challenges both the district court's acceptance of his guilty plea and the court's loss calculation for purposes of sentencing.

II

Higgins argues that he should be permitted to withdraw his guilty plea to the bank fraud charge because the facts to which he stipulated are insufficient

as a matter of law to support a conviction under 18 U.S.C. sec. 1344. Higgins concedes that he is raising this issue for the first time on appeal and that our review is at most for plain error. United States v. Cross, 57 F.3d 588 (7th Cir. 1995).

Higgins is complaining that the facts that formed the basis of his conviction showed no more than the knowing deposit of a bad check and that this alone is not enough to support a bank fraud conviction. In order to support a conviction under sec. 1344(1), the government must prove that the defendant engaged in a "pattern or course of conduct designed to deceive a financial institution with the intent to cause actual or potential loss." United States v. Ledonne, 21 F.3d 1418, 1427-28 (7th Cir. 1994). It is not necessary for it to prove that the defendant made any specific misrepresentations or false statements. United States v. Doherty, 969 F.2d 425, 429 (7th Cir. 1992). Simply attempting to deposit a bad check does not constitute a scheme to defraud, id. at 427, but it can be evidence of a pattern or course of conduct designed to deceive a financial institution. Ledonne, 21 F.3d at 1428. To convict under sec. 1344(2), the government must prove both that the defendant engaged in a scheme to obtain the monies, funds, or credits of the financial institution and that the scheme involved "other acts or communications of misrepresentation." Id. at 1426. Again, merely writing a bad check is not enough to constitute bank fraud under this subsection; the defendant must, in addition, have made false representations or promises. Id.

If Higgins were correct that he admitted under oath only the knowing deposits of bad checks, we would need to consider to what extent he would be entitled to reopen his guilty plea proceedings. But he is not: the facts to which Higgins agreed go well beyond the knowing deposit of a bad check and are sufficient to support a conviction under either sec. 1334(1) or sec. 1334(2). Higgins violated sec. 1334(1) when he presented the ONB bank manager with the $420,000 Civitas check, attempting (successfully) to induce ONB to open a checking account for him with a balance of $420,000 to which he could have immediate access through

the temporary checks, which he could then use to purchase the Lexus automobiles. The deposit of the bogus $420,000 check and the use of ONB's temporary checks evidenced Higgins's intent to expose ONB to potential loss. It is of no consequence that ONB did not suffer any actual financial loss from the scheme, or even that such loss was highly unlikely. See United States v. Ryan, 213 F.3d 347, 350 (7th Cir. 2000).

Higgins also satisfied the requirements for conviction under sec. 1334(2). He presented the $420,000 check to the ONB bank manager along with an elaborate tale about his dissatisfaction with Civitas and his desire to bring E&S's banking business to ONB. Mirroring the strategy he apparently used with Kenny Kent Lexus, his false statements tended to allay concerns ONB might have about a check of that size, and they improved the chances that ONB would make funds available to Higgins without waiting for the check to clear. The fact that ONB's bank manager had the good sense to investigate Higgins's claims does not make Higgins any less guilty of bank fraud. The district court, therefore, properly denied Higgins's motion to withdraw the plea.

III

In order to establish the appropriate sentencing range for bank fraud under the Sentencing Guidelines, the district court is required to determine the amount of loss attributable to the scheme. See U.S.S.G. sec. 2F1.1(b)(1); United States v. Bonanno, 146 F.3d 502, 509 (7th Cir. 1998). Comment 8 to U.S.S.G. sec. 2F1.1 instructs courts that "if an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss." The district court concluded that Higgins intended to impose on ONB a loss amounting to the entire $420,000--representing the amount of the bad Civitas check he deposited with ONB. The district court's loss determination is a question of fact which we review for clear error. Bonanno, 146 F.3d at 508-09. The meaning of "loss" is a legal question which we review de novo. United States v. Mount, 966 F.2d 262, 265 (7th Cir. 1992).

Higgins claims that the district court

made two legal errors, either of which would require reversal. First, citing United States v. Mau, 45 F.3d 212, 216 (7th Cir. 1995), he argues that the amount of loss as a matter of law can only be the actual loss at the time of discovery, not the intended loss, because that is the rule that applies for check kiting schemes. Higgins concedes that his was not a simple check kiting scheme, but he urges that it was close enough that the same rule ought to be applied in his case. We rejected precisely the argument that Higgins advances in United States v. Kipta, 212 F.3d 1049 (7th Cir. 2000). Like Higgins, Kipta's crime was writing checks on a single account that she inflated with bogus deposits. When she was caught, she had imposed $38,219.92 in actual losses on First Chicago Bank, but her inflated account balance was $171,355.46. Kipta argued that actual loss was the appropriate loss measure. We disagreed, holding that the district court properly sentenced Kipta for the loss she intended to inflict--the full $171,355.46. Id. at 1052. In Higgins's case too, the district court properly looked to intended loss, in keeping with U.S.S.G. sec. 2F1.1, comment. (n.8).

Higgins further argues that, even if intended loss was the appropriate standard, the district court did not properly determine the intended loss figure. We agree with this contention. Intended loss analysis, as the name suggests, turns upon how much loss the defendant actually intended to impose on the financial institution. It does not matter whether the loss materialized or even whether it was economically possible to impose such a loss, see United States v. Stockheimer, 157 F.3d 1082, 1090 (7th Cir. 1998) (affirming $80 million intended loss and limiting economic reality arguments to motions for downward departure), but the district court must find, by a preponderance of the evidence, that the defendant intended to impose on the financial institution the particular amount of loss for which he is to be sentenced. See United States v. Strozier, 981 F.2d 281, 284-85 (7th Cir. 1992) (affirming intended loss determination made after finding, based on significant circumstantial evidence, that defendant would have continued writing checks against account but for his arrest); United States v. Lauer, 148 F.3d 766,

767-68 (7th Cir. 1998) (same).

Our review of the sentencing hearing transcript forces us to conclude that the district court never made a finding about how much loss Higgins actually intended to inflict on ONB. In explaining its decision to sentence Higgins on the basis of the full $420,000, the court stated only that Higgins's motivation for depositing the check was to "obtain a deposit slip for that amount of money to make Kenny Kent feel that Mr. Higgins was a legitimate businessman or a man of means having almost a half a million dollars in a checking account." Then, instead of going on to make a finding of intended loss, the court said only "So I do find that the intended level was to be higher than the $69,990 figure. The higher amount was to establish his legitimacy and his substantial bank account for the purpose of obtaining the car."

These findings are too vague to support a conclusion that Higgins intended to inflict loss in the full amount of the $420,000 check. There is no indication that the district court believed that Higgins intended to actually deprive ONB of the full $420,000 he purported to be depositing, as opposed to merely impressing the bank with his importance and then using some smaller sum as he did with the Lexus purchases. If anything, the district court's statement leaves the impression that Higgins intended to impose $69,990 of loss on ONB and that the primary purpose of the $420,000 figure was simply to deceive Kenny Kent Lexus. Although a second remand is regrettable, we believe that it is unavoidable on this record. Whether the loss was $69,990 or as much as $420,000 makes a substantial difference for the sentence: the Guidelines require a 5-level upward adjustment for losses between $40,000 and $70,000, and a 9-level upward adjustment for losses between $350,000 and $500,000. See U.S.S.G. sec. 2F1.1(b)(1)(F), (J). (Indeed, even on his own account Higgins is only $10 away from a 6-level upward adjustment, but even this must be supported by evidence.)

The remand is, we stress, a very limited one: it is not an invitation for Higgins once again to raise other issues. On

remand, the district court must determine whether the government proved by a preponderance of the evidence that Higgins actually intended to impose a $420,000 loss on ONB. The original deposit of the Civitas check is some evidence of this intent, as is Higgins's use of the temporary ONB check. If, however, all the government's evidence proves is that Higgins's intent was to use only $69,990 of the $420,000, or some other amount between those two numbers, Higgins's sentence must be computed accordingly.

IV

For these reasons, we Affirm Higgins's conviction for bank fraud and Remand for resentencing in accordance with this opinion.