F I L E D
**United States Court of Appeals**
**Tenth Circuit**

**AUG 29 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

  Plaintiff - Appellee,

v.

EDWARD KOSKEY,

  Defendant - Appellant.

No. 02-1563
(D.C. No. 02-CR-239-N)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **BRISCOE**, and **LUCERO**, Circuit Judges.[**]

  Defendant-Appellant Edward Koskey pled guilty to misuse of a social security number to commit fraud, in violation of 42 U.S.C. § 408(a)(7)(B). Mr. Koskey was sentenced to 24 months of imprisonment, three years of supervised release, and was ordered to pay restitution of $33,511. On appeal, Mr. Koskey argues that the district court incorrectly applied U.S.S.G. § 2F1.1 (Nov. 2000) in

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

computing the amount of loss from the fraudulent scheme. Specifically, Mr. Koskey argues that the district court calculated his sentence based upon an eight-level upward adjustment for the amount of loss ($306,222) when the correct adjustment should have only been four levels corresponding to an amount of loss of $33,511. Mr. Koskey does not contest $31,222 of the loss amount resulting from fraudulent benefits received from the Social Security Administration; rather, his contention is that even though the face value of the counterfeit checks was $275,000, the district court should have only added $2,289 to the uncontested portion of loss, for a total loss of $33,511 ($31,222 + $2,289). The district court relied upon the uncontested portion of the loss plus the face value of the counterfeit checks resulting in a loss of $306,222 ($31,222 + $275,000).

We review the district court's factual determination of a U.S.S.G. § 2F1.1 loss for clear error, but the factors the district court may properly consider are reviewed de novo. United States v. Banta, 127 F.3d 982, 983 (10th Cir. 1997); see also United States v. Galbraith, 20 F.3d 1054, 1058 (10th Cir. 1994). Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and we affirm.

Section 2F1.1 applies to crimes involving fraud and deceit, including violations of 42 U.S.C. § 408(a)(7)(B). Under this guideline, the offense level is calculated based in part on the dollar value of the loss involved in the criminal

conduct.  See U.S.S.G. § 2F1.1(b)(1).  If an intended loss can be determined and it exceeds the actual loss, the court should use the intended loss to calculate the defendant's offense level.  See id. cmt n.8 ("[I]f an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss."); United States v. Smith, 951 F.2d 1164, 1166 (10th Cir. 1991).  Indeed, the commentary provides a very pertinent example: "[I]f the fraud consisted of . . . representing that a forged check for $40,000 was genuine, the loss would be $40,000."  U.S.S.G. § 2F1.1(b)(1) cmt n.8.  Note 8 also refers to U.S.S.G. § 2B1.1, wherein application note 2 plainly states: "In the case of a theft of a check or money order, the loss is the loss that would have occurred if the check or money order had been cashed."  U.S.S.G. § 2B1.1 cmt. n.2.  The reason the intended loss figure is used, even if it is significantly greater than the actual loss, is to measure the magnitude of the crime at the time it was committed.  United States v. Janusz, 135 F.3d 1319, 1324 (10th Cir. 1998).

Mr. Koskey contends that the economic reality doctrine precludes the district court's determination as to the amount of the intended loss.  See United States v. Santiago, 977 F.2d 517, 524 (10th Cir. 1992) (holding that intended loss under § 2F1.1 cannot exceed the loss a defendant "in fact could have occasioned if his or her fraud had been entirely successful").  The rationale of Santiago does not apply here given the clear direction of the Sentencing Guidelines and the sums

certain appearing on these instruments. See, e.g., United States v. Haber, 251 F.3d 881, 892-93 (10th Cir. 2001) (holding that an intended loss is economically feasible and thus appropriate under § 2F1.1 if the defendant was "capable of inflicting the loss and had some reasonable prospect of success").

In the course of their misfeasance, Mr. Koskey and his wife made two separate fraudulent deposits of counterfeit checks into an account at TCF National Bank: one for $25,000 (of which $2,289 was withdrawn) and another for $250,000. After the second check for $250,000 was deposited, the bank placed a hold on all uncollected funds in the account. Mr. Koskey argued that this was normal commercial practice, but the district court rejected this contention for lack of evidence. Instead, the court found that the bank became suspicious.

Even though the bank acted, the economic reality doctrine does not require a different result when it comes to intended loss. Here, the funds became "unattainable" because the bank grew suspicious and put a hold on Mr. Koskey's uncollected funds, not because it was not "realistically possible" for Mr. Koskey to inflict that amount of loss. See Aplt. Br. at 7. Here, we are dealing with sums certain on the face of would-be commercial instruments tendered to the bank for deposit. We agree with those courts that have relied upon the face value of such instruments in determining intended loss. See United States v. Kipta, 212 F.3d 1049, 1052 (7th Cir. 2000) (holding that even though only $38,219 had been

actually withdrawn, the district court correctly sentenced the defendant based upon the total amount of the fraudulent deposits, calculated at $171,355); see also United States v. Higgins, 270 F.3d 1070, 1074-75 (7th Cir. 2001). The district court's finding – that had the scheme operated as was planned the intended loss would amount to $306,222 – is not clearly erroneous.

AFFIRMED. The mandate shall issue forthwith.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge