NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 5, 2012[*]
Decided January 4, 2013

**Before**

ILANA DIAMOND ROVNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 12-2056

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 07-Cr-309 |
| MARQUIS JOHN ROEN, JR., *Defendant-Appellant*. | Rudolph T. Randa, *Judge*. |

**ORDER**

While on supervised release after serving time in federal prison for fraud offenses, Marquis Roen opened a new checking account and told the bank's employee that more than $100 million from an inheritance soon would be wired into the account. The bank was skeptical and quickly closed the account after discovering Roen's criminal history. His probation officer petitioned the sentencing court to revoke his supervised release, citing as grounds that Roen had failed to pay restitution and violated a number of other conditions

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. The appeal is thus submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

including that he not commit more crimes or open a bank account without approval. The district court agreed. The court revoked Roen's supervision and imposed 24 months of reimprisonment. Roen challenges the term of reimprisonment, and the government concedes that a remand is warranted for the district court to explain, and possibly reconsider, the length of that term.

The underlying  facts are not in dispute. Roen was sentenced to 51 months in prison after pleading guilty in 2008 to mail fraud, 18 U.S.C. § 1341, and fraudulent use of a social security number, 42 U.S.C. § 408. These were his seventh and eighth convictions for fraud or theft, and the underlying criminal conduct included writing hot checks on bank accounts that were closed. He was released from prison and commenced his term of supervised release in August 2011. The conditions of his supervised release required payment of restitution and prohibited Roen from committing new crimes or opening a checking account without supervision by his probation officer. Yet within a matter of weeks, Roen had gone to a branch of Chase Bank and—having no assets or income—laid out his plan to transfer millions into the account he opened with only a nominal deposit and without his probation officer's knowledge. When the bank discovered Roen's background and raised the alarm, the staff at the halfway house where he was living searched his room and discovered that Roen already had written a check to AT&T for $300 on the Chase account. The search also uncovered a cache of other evidence, including a purchase agreement for a vehicle, an automobile insurance policy, an apartment lease, documents suggesting that Roen was planning to buy and sell real estate, and routing numbers for various banks. Within a short while, moreover, his daughter reported that Roen had used her social security number to buy an insurance policy, and his son reported suspicious transactions on his debit card, including a small charge to AT&T.

The probation officer initially asserted that Roen's conduct in opening the Chase account had violated 18 U.S.C. § 1014, which prohibits making false statements—material or not—to financial institutions and other entities. *See United States v. Wells*, 519 U.S. 482, 489–99 (1997); *United States v. Lane*, 323 F.3d 568, 582–83 (7th Cir. 2003). A violation of § 1014 is a felony, and thus would have constituted a Grade A violation of Roen's conditions of release. *See* U.S.S.G § 7B1.1(a)(1). But he persuaded the government and the probation officer that § 1014 is violated only by false statements made *in connection with an application for credit*, which is incorrect. *See United States v. Krilich*, 159 F.3d 1020, 1028–29 (7th Cir. 1998). The government chose to argue instead that Roen had committed bank fraud, 18 U.S.C. § 1344, which also would be a Grade A violation. The sentencing guidelines anticipate that someone on supervision with Roen's criminal history will face another 30 to 37 months in prison for committing a Grade A violation, *see* U.S.S.G. § 7B1.4(a), but for him the range was capped by the statutory maximum of 24 months, *see* 18 U.S.C. § 3583(e)(3); U.S.S.G. § 7B1.4(b)(1).

In deciding that 24 months was appropriate, the district court agreed with the government that Roen had committed bank fraud. The court appears to have rejected Roen's contention that his lies about having millions of dollars were not material, but the judge did not explain his reasoning or specify whether Roen's conduct had violated subsection (1) or subsection (2) of § 1344. The elements of the two subsections are slightly different. *See United States v. Higgins*, 270 F.3d 1070, 1073–74 (7th Cir. 2001) (explaining that § 1344(1) requires intent that bank suffer actual or potential loss, whereas § 1344(2) requires material representation); *United States v. LeDonne*, 21 F.3d 1418, 1425 (7th Cir. 1994) (same). The court also found that Roen had committed three related Grade C violations of his conditions of release, and had failed to pay restitution. *See* U.S.S.G. § 7B1.1(a)(3).

On appeal Roen concedes that a preponderance of evidence is enough to establish a violation of a condition of supervised release. *See* 18 U.S.C. § 3583(e)(3); *United States v. McIntosh*, 630 F.3d 699, 703 (7th Cir. 2011); *United States v. Flagg*, 481 F.3d 946, 949 (7th Cir. 2007). He does not dispute that his actions constituted Grade C violations, which are enough to sustain the revocation. *See United States v. Berry*, 583 F.3d 1032, 1033–34 (7th Cir. 2009). But the Grade C violations, says Roen, would have yielded a prison term of just 7 to 13 months under the guidelines, not the higher term for a Grade A violation. *See* U.S.S.G. § 7B1.4(a). And among the alleged violations, Roen continues, only the commission of a crime would have been a Grade A violation. *See id*. § 7B1.1(a). Having convinced the district court that his actions could not have violated § 1014, Roen now argues that neither did his conduct constitute a crime under § 1344. For its part, the government stands behind the district court's decision to revoke Roen's supervision but argues that meaningful appellate review of the term of reimprisonment is impossible because the district court did not specify whether Roen had violated subsection (1) or (2) of § 1344. The government thus proposes a remand for the court to explain its reasons for finding that Roen violated § 1344 or, if the court cannot, to reconsider Roen's term of reimprisonment.

Roen contends that the checking account did not give him access to funds beyond what he deposited, so he could not have intended to cause Chase actual or potential loss, and could not have violated § 1344(1). *See Higgins*, 270 F.3d at 1073–74. Yet when he opened the account, Roen departed bank with *blank* checks, and just as he did in committing the frauds that landed him on supervised release in the first place, he could use those checks with or without money in the account. In fact, although Chase took steps within hours to prevent an actual loss, Roen already had written a $300 check that his bank balance would not cover. Thus, a finder of fact could conclude that Roen's conduct in writing that check is circumstantial evidence of his intent to cause loss. *See United States v. Ryan*, 213 F.3d 347, 350 (7th Cir. 2000) (explaining that "knowingly writing checks on an inadequate account balance" is "circumstantial evidence of intent" to commit bank fraud); *United States v. Moede*, 48 F.3d 238, 241–42 (7th Cir. 1995) (same); *United States v. Reaume*, 338 F.3d 577,

580–82 (6th Cir. 2003) (explaining that evidence was sufficient to convict under § 1344(1) when defendant put bank at risk by opening checking accounts with nominal deposits and then wrote checks he did not intend to cover); *United States v. Ratchford*, 942 F.2d 702, 703–04 (10th Cir. 1991) (upholding conviction under § 1344(1) when defendant intentionally wrote checks on accounts that did not have sufficient funds to cover those checks).

Roen also insists that, because Chase requires only a $25 initial deposit, his misrepresentations could not have been material to the bank's decision to open the checking account, and thus his actions did not violate § 1344(2). *See Higgins*, 270 F.3d at 1073–74. Yet materiality does not mean reliance: The misrepresentation need only be capable of influencing the victim. *See Neder v. United States*, 527 U.S. 1, 16 (1999); *United States v. Rosby*, 454 F.3d 670, 674 (7th Cir. 2006); *United States v. Reynolds*, 189 F.3d 521, 525 (7th Cir. 1999). Chase does not require millions of dollars to open a checking account, but neither must the bank accept as a customer anyone with $25. A finder of fact might decide, then, that Roen's promise to bring significant funds to the bank *could* have made the bank more likely to accept him as a customer. *See United States v. Morganfield*, 501 F.3d 453, 461–63 (5th Cir. 2007) (upholding convictions under § 1344(2) when defendant made small initial deposits to open checking accounts in names of phony businesses, obtained checks for those accounts, and wrote checks to fictitious employees in amounts exceeding initial deposits); *United States v. Khorozian*, 333 F.3d 498, 501–02, 504–06 (3d Cir. 2003) (concluding that defendant's misrepresentations to bank, including that she would make initial deposit by wiring funds into newly opened account, were material).

What matters, though, is what the district court found. Without a fuller explication of the court's reasons for deciding that Roen had violated § 1344—in particular whether his conduct falls within subsection (1) or (2) or both—we cannot adequately assess the court's determination that Roen committed a Class A violation of his supervised release. And as Roen points out, only a Class A violation could have brought his 24-month term of reimprisonment within the range set out in § 7B1.4(a). Accordingly, although we do not disturb the district court's exercise of discretion in revoking Roen's supervised release, we accept the government's confession of error and remand for the court to further consider the term of reimprisonment. If the court again concludes that Roen's conduct constituted a violation of § 1344, the court should make findings about each subsection it finds applicable.

We **AFFIRM** the revocation of Roen's term of supervised release but **VACATE** the 24-month term of reimprisonment and **REMAND** for further consideration consistent with this order.