In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-2183

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ABIDEMI AJAYI,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 12 CR 190 — **Rebecca R. Pallmeyer**, *Judge.*

ARGUED MAY 21, 2015 — DECIDED DECEMBER 11, 2015

Before WOOD, *Chief Judge*, and ROVNER and WILLIAMS, *Circuit Judges*.

WILLIAMS, *Circuit Judge*. Abidemi Ajayi deposited a $344,657.84 fraudulent check, which had originally been written to another company, into his bank account. Ajayi spent about half of the money before the bank froze his account. He was indicted and convicted after a jury trial of five counts of bank fraud and one count of money laundering.

He now appeals his conviction arguing that the evidence was insufficient to establish that he knew the check was altered. However, we find that the evidence of his guilt, which includes all the facts and circumstances surrounding the check, was compelling and sufficient to support the conviction. He also challenges the district court's decision to exclude certain emails related to his business plan to secure MRI machines because they were not related to the case. We agree with the district court and find that the emails were irrelevant because the emails had nothing to do with the fraudulent check or the person Ajayi claims sent him the check. Next, Ajayi contends that the district court erred by only submitting to the jury a portion of the pattern jury instruction that defines scheme, which would permit the jury to find him guilty without proof of misrepresentation. But, we find no error in the jury instructions because the instructions, reviewed as a whole, did not permit the jury to find him guilty without finding proof of misrepresentation. He also contends that the five bank fraud counts were multiplicitous. Since the four counts of bank fraud arose from Ajayi's acts of withdrawing funds after he deposited the fraudulent check and were merely in furtherance of the bank fraud, we conclude that four bank fraud counts were multiplicitous. Therefore, we vacate four of the bank fraud convictions. Finally, he asserts that there was a variance or a constructive amendment between the indictment and the proof offered at trial, but this contention is without merit.

## I.  BACKGROUND

The following facts were introduced at Ajayi's trial. Ajayi, a U.S. citizen of Nigerian descent, was an electrical engineer, with a specific background related to magnetic reso-

nance imaging ("MRI") machines. Ajayi wanted to start a business selling MRI products in Africa. So, he incorporated GR Icon ("GRI") in Illinois and another company in Africa. To fund the business he sought money from private investors and African governments.

While traveling to Cameroon in 2009, he struck up a conversation with Charles Brown, a man on the plane who was reading an issue of *Scientific American* that had an MRI machine on the cover. Ajayi introduced himself, explained he worked with MRI machines, and eventually told Brown about his business and showed him his business materials. They talked for six hours. Brown indicated that he was a venture capitalist and by the end of the conversation, he stated that he would be interested in investing $45,000.

After returning home, Ajayi received an envelope from Brown with a $344,657.84 check. He called Brown to ask about the check amount. Brown explained that the accounting department had made an error, told Ajayi to deposit the check right away, and stated that they would work out a way for Ajayi to refund the difference.

On November 27, 2009, Ajayi deposited the check through an automatic teller machine ("ATM") into his GRI account. Before this deposit, the account balance was $90.08. (And during 2009, it never had an ending balance over $332.) The bank held the check for about two weeks before releasing the funds around December 8, 2009. Ajayi called Brown and told him that the check had cleared. Thereafter, Brown flew to Chicago unannounced and told Ajayi to meet him downtown. They met, and Brown demanded the difference between the check and the $45,000 promised.

Pursuant to Brown's instructions, between December 9 and December 12, 2009, Ajayi wrote at least five checks to himself from the GRI account and cashed them. As charged in the indictment, on December 9, 2009, he wrote a $9,600 check to himself and cashed it at a Chase branch in Evanston. The next day, he wrote a $16,500 check to himself and cashed it at a Chase branch in downtown Chicago. On December 11, 2009, he wrote a $17,000 check to himself and cashed it at a Chase branch just north of downtown Chicago. During that bank visit, he also made a $53,000 wire transfer from the account. On December 12, 2009, he wrote a $9,650 check to himself and cashed it at a Chase branch on the north side of Chicago. That day, he also wrote a $9,800 check to himself and cashed it at a different Chase branch on the north side of Chicago. At some point during this period, Ajayi also made retail purchases at Gap and the Apple Store. There were additional checks cashed in a similar manner that were not charged in the indictment.

In total, he was able to withdraw more than $171,000 before the bank froze his account. The bank learned from ABM, the Texas company that issued the check, that ABM believed the check's payee had been changed because the intended payee, Pollock, another Texas company, had contacted ABM asking for payment. After investigating, ABM learned that the payee's name on the check had been altered. There are no facts as to who altered the check and how it got from Texas to Illinois.

Ajayi attempted to offer into evidence emails between him and individuals who would help facilitate his purchase of MRI equipment. These emails were exchanged around July 20–21, 2009, December 9–30, 2009, and January 16, 2010.

In response to the government's argument that Ajayi's business was not legitimate, Ajayi offered these emails to show that he was legitimately trying to enter the MRI business. The district court deemed the emails not relevant because they did not relate to the fraudulent check, the charges, or Brown.

During a hearing held at the close of evidence, the government proposed pattern jury instructions, and stated that any exceptions were noted. As to the jury instruction defining "scheme," the government did not use all the wording of the pattern jury instruction, and it did not contain a statement indicating any alteration. The government did not inform Ajayi or the court that it was not a pattern instruction, and Ajayi's counsel assumed that it was a pattern instruction and stated "no objection."

The government charged Ajayi with five counts of bank fraud under 18 U.S.C. §§ 1344(1) and (2), one count of money laundering under 18 U.S.C. § 1957(a), and one count of knowingly making and possessing an altered check under 18 U.S.C. § 513(a). The jury convicted Ajayi of the bank fraud and money laundering counts. The district court sentenced Ajayi to 44 months' imprisonment. Ajayi appeals his conviction.

## II. ANALYSIS

On appeal, Ajayi raises five challenges to his conviction. Specifically, he challenges: (1) the sufficiency of the evidence underlying his convictions for bank fraud and money laundering, (2) the district court's decision to exclude Ajayi's business emails on the ground of relevance, (3) the district court's failure to give the pattern jury instruction defining

scheme, (4) the five bank fraud counts as multiplicitous, and (5) whether there was a variance or a constructive amendment between the indictment and the proof offered at trial. We address each argument in turn.

**A. Evidence Was Sufficient to Sustain Ajayi's Convictions.**

Ajayi challenges the sufficiency of the evidence in support of the convictions for bank fraud and money laundering. He argues that an essential fact to each count was that he knew the check he deposited was altered and that the government failed to prove this fact. We disagree.

To successfully challenge the sufficiency of the evidence used to convict him, Ajayi must show that, "based on the evidence presented at trial, no rational juror could find guilt beyond a reasonable doubt." *United States v. Morris*, 576 F.3d 661, 666 (7th Cir. 2009). We often describe this as a nearly insurmountable hurdle. *See, e.g., id.* at 665–66 (quoting *United States v. Pulido*, 69 F.3d 192, 205 (7th Cir. 1995)). This description is apt because we will only find the evidence insufficient "when the record contains no evidence, regardless of how it is weighed, from which the trier of fact could find guilt beyond a reasonable doubt" as to each element of the crime. *United States v. Domnenko*, 763 F.3d 768, 772 (7th Cir. 2014) (quoting *United States v. Torres-Chavez*, 744 F.3d 988, 993 (7th Cir. 2014)). And, we must "view the evidence in the light most favorable to the government." *Morris*, 576 F.3d at 666.

In order to convict Ajayi for bank fraud under 18 U.S.C. § 1344(1), the government must prove: "(1) there was a scheme to defraud a financial institution; (2) the defendant knowingly executed or attempted to execute the scheme; (3)

the defendant acted with the intent to defraud; and (4) the deposits of the financial institution were insured by the FDIC at the time of the charged offense." *United States v. Parker*, 716 F.3d 999, 1008 (7th Cir. 2013). Bank fraud under § 1344(2) requires the government to prove that there was a scheme to obtain money from the bank and that the scheme involved a materially false or fraudulent pretense, representation, or promise, in addition to elements two through four necessary under § 1344(1). *See United States v. Higgins*, 270 F.3d 1070, 1073–74 (7th Cir. 2001). Money laundering under 18 U.S.C. § 1957(a) requires the government to prove the defendant knew the transaction involved criminally derived property that was derived from an unlawful activity, here, bank fraud. *See United States v. Haddad*, 462 F.3d 783, 791–92 (7th Cir. 2006). Because Ajayi contends that essential to each count was proof that he knew the check was altered and the government failed to prove that fact, we will only address that aspect of the crimes.

The government introduced evidence establishing that the fraudulent alterations of the check were readily apparent, that Ajayi had control of the business account, with a $90.08 balance, that carried a balance of less than $332 the year before the deposit. The government also proved that Ajayi deposited the check through an ATM as opposed to a teller and that within five days of the check's clearance, Ajayi withdrew approximately $171,000. He wrote checks to himself that he cashed at different branches, sent a wire transfer to a third-party in Florida, and made purchases at retailers such as Gap and the Apple Store.

While there was no direct evidence that Ajayi deposited the check knowing it had been altered, the government

could also establish this fact by circumstantial evidence and by inferences drawn from the scheme itself. *See United States v. Howard*, 30 F.3d 871, 874 (7th Cir. 1994); *see also United States v. Jackson*, 540 F.3d 578, 594 (7th Cir. 2008). Based on the government's circumstantial evidence regarding the account balances and the way that Ajayi withdrew funds, a rational juror could have found that Ajayi knowingly deposited a fraudulent check. Additionally, there was evidence that the alterations on the check were obvious. Given these facts, Ajayi's story that he was expecting a $45,000 check—but received one for almost $350,000, and cashed it—is highly suspect. Finally, this evidence was sufficient not only to establish that Ajayi deposited the check knowing of the alternation, but it also supports the money laundering conviction.

Relying on *United States v. Anderson*, 188 F.3d 886 (7th Cir. 1999), Ajayi finally argues that as to the bank fraud counts, the fraud scheme ended when Ajayi deposited the check, so evidence of his activities after cashing the check cannot establish that he knew the check was fraudulent. "[T]he crime of bank fraud is complete when the defendant places the bank at risk of financial loss, and not necessarily when the loss itself occurs." *Anderson*, 188 F.3d at 888. The "bank fraud statute is meant to punish each 'execution' of the scheme to defraud, and not each act in furtherance of the scheme to defraud." *Id.* at 889. Although the crime is complete when the bank is put at risk of financial loss, a defendant could still engage in subsequent acts in furtherance of the scheme that are not indictable, but are still part of the scheme. *See United States v. Longfellow*, 43 F.3d 318, 323 (7th Cir. 1994). Ajayi overstates the holding in *Anderson*. Even if the withdrawal of funds were acts in furtherance of the crime, as opposed to separate crimes as charged, the un-

charged acts could be evidence that supports the conviction. *See Anderson*, 188 F.3d at 889; *Longfellow*, 43 F.3d at 323.

**B. No Abuse of Discretion to Refuse Admission of Emails.**

Ajayi argues that the central issue at trial was "whether he knowingly executed the bank fraud, i.e., whether he knew the check was altered." He contends that the district court erred by excluding emails exchanged between him and individuals who were helping him buy or attempting to sell him MRI machines because the emails would have supported his defense that the check was intended to help his fledgling MRI business. These emails were sent around July 20–21, 2009, December 9–30, 2009, and January 16, 2010. He maintains that the jury could have reasonably inferred from the text and timing of the emails that he had been contemplating the purchase of MRI machines to start his business for at least four months before he received the check in November 2009, and that after he received the check, he increased the seriousness of his inquiries about the MRI machines. He also argues that the emails would have discredited the government's argument that his business was not legitimate and the check had no legitimate purpose.

We review the district court's decision to exclude evidence for abuse of discretion. *United States v. Holt*, 460 F.3d 934, 936 (7th Cir. 2006). Even if the district court erred, "[w]e will reverse and order a new trial only if any evidentiary errors are not harmless." *United States v. Simon*, 727 F.3d 682, 696 (7th Cir. 2013). We evaluate challenges to the admissibility of evidence in light of all the evidence before the jury. *Holt*, 460 F.3d at 936.

Relevant evidence is evidence that has a tendency to make a fact more or less probable than it would be without the evidence and involves a fact of consequence in determining the action. Fed. R. Evid. 401. Although the district court was not required to exclude this evidence, it was acting within its discretion when it did. District courts have "broad discretion to control the admission of evidence." *United States v. Ozuna*, 561 F.3d 728, 738 (7th Cir. 2009). Evidentiary rulings are "subject to reversal only if 'no reasonable person could take the view adopted by the trial court.'" *United States v. Blitch*, 773 F.3d 837, 847 (7th Cir. 2014) (quoting *United States v. Vargas*, 552 F.3d 550, 554 (7th Cir. 2008)). While the emails may have shown that Ajayi had a legitimate business, a reasonable person could have taken the view that they were not germane because they had no connection to the crime—the forged check, Brown, or Ajayi's intent to engage in the scheme. Therefore, the exclusion of the emails was not an abuse of discretion. *See United States v. Van Allen*, 524 F.3d 814, 825 (7th Cir. 2008) (finding that the district court did not abuse its discretion by excluding evidence because the evidence did not have any bearing on the elements of the crime).

## C.  No Error in Failure to Give Pattern Scheme Jury Instruction.

Ajayi argues that the district court's failure to include certain language from the pattern jury instruction that defines "scheme" constituted plain error and prejudiced him. The government responds that the issue is not reviewable because Ajayi waived his objection to the jury instruction when he affirmatively agreed to it as proposed by the government, and if the issue were not waived, there was no er-

ror. We agree. Even if we were to find that Ajayi did not waive his right to challenge the "scheme" jury instruction, he fails to establish that there was plain error.

Ordinarily, we treat an affirmatively stated "no objection" to a jury instruction as a waiver. *See, e.g., United States v. Natale*, 719 F.3d 719, 729–30 (7th Cir. 2013). "But in *Natale*, we recognized the harshness of the waiver rule where defense counsel's statements likely resulted from negligently bypassing a valid argument rather than a knowing intentional decision." *United States v. Pust*, 798 F.3d 597, 602 (7th Cir. 2015). When a simple "no objection" was given during a rote call-and-response colloquy with the district court judge during a charging conference, we suggested that it may be that waiver is not presumed and the court may examine whether the objection was forfeited rather than waived. *Natale*, 719 F.3d at 730–31. We further suggested that reviewing these issues may be proper when the alleged erroneous instruction "inaccurately state[d] the law by minimizing or omitting elements required for conviction." *Id.* at 731. Here, Ajayi's counsel stated "no objection" during a rote colloquy with the district court. Also, the government represented that the instruction was a pattern one and did not disclose that the instruction omitted language that was relevant to the case. (In other instances, the government noted alterations to the pattern instruction or when the instruction was not a pattern one.)

However, even if we were to conclude that the deletion of this language was an error, he has not shown that it was plain. We may only find plain error if he establishes that there is: (1) an error or defect; (2) that is clear or obvious; and (3) that affected his substantial rights. *Puckett v. United States*,

556 U.S. 129, 135 (2009). If the defendant can establish "the above three prongs …, the court of appeals has the *discretion* to remedy the error," if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.*

The Seventh Circuit Pattern Criminal Jury Instructions defines "scheme" for charges under 18 U.S.C. § 1344. The pattern instruction, in full, states:

> A scheme is a plan or course of action formed with the intent to accomplish some purpose.
>
> [In considering whether the government has proven a scheme to obtain moneys, funds, credits, assets, securities, or other property from a [bank] [financial institution] by means of false pretenses, representations or promises, the government must prove at least one of the [false pretenses, representations, promises, or] acts charged in the portion of the indictment describing the scheme. However, the government is not required to prove all of them.]
>
> [A scheme to defraud a [bank] [financial institution] means a plan or course of action intended to deceive or cheat that [bank] [financial institution] or [to obtain money or property or to cause the [potential] loss of money or property by the [bank] [financial institution]. [A scheme to defraud need not involve any false statement or misrepresentation of fact.]]

*Pattern Criminal Jury Instructions of the Seventh Circuit* 413 (2012). The commentary explains when to use the bracketed language.

> The first bracketed paragraph should be given in a case in which a scheme to obtain money from a bank by means of false pretenses, representations or promises is charged under § 1344(2). The second bracketed paragraph should be given in a case in which a scheme to defraud a bank is charged. Where both methods of violat-

> ing the statute are charged, both paragraphs should be
> given.

*Id.* The government's proposed instruction, which was adopted by the court, only included the first sentence and the second bracketed paragraph of the pattern instruction.[1]

Ajayi argues that the district court erred. Because its jury instruction did not include the language from the pattern instruction clarifying what constitutes a scheme, the jury did not know that it had to find proof of a misrepresentation to convict him.

The district court's failure to include the language of the first bracketed paragraph of the pattern instruction defining "scheme" did not permit the jury to find Ajayi guilty without proof of a misrepresentation. The indictment charged Ajayi under § 1344(2). So, the instruction arguably should have included this paragraph. But we must keep in mind that the instruction given immediately before the scheme instruction informed the jury that it must find proof of a misrepresentation beyond a reasonable doubt. It stated that the government had to prove beyond a reasonable doubt that the "defendant knowingly executed the scheme" and that the "scheme involved a materially false or fraudulent pretense, representation, or promise." This language informed

---

[1] The jury instruction used by the court stated:

> A scheme is a plan or course of action formed with the intent to accomplish some purpose.

> A scheme to defraud a bank means a plan or course of action intended to deceive or cheat that bank or to obtain money or property or to cause the potential loss of money or property by the bank.

the jury that proof of a misrepresentation was required. We assume the jury follows the instructions given. *United States v. Keskes*, 703 F.3d 1078, 1086 (7th Cir. 2013). Ajayi did not point to anything in the record to overcome that presumption. The omitted language defining scheme would merely have informed the jury that regardless of how many misrepresentations are alleged in the indictment, the government must prove at least one. There was no plain error and the absence of the language did not permit the jury to find Ajayi guilty without the evidence necessary for conviction.

### D. Bank Fraud Counts Are Multiplicitous.

Ajayi contends that the five counts of bank fraud in the indictment are multiplicitous. The government contends that the bank fraud counts are not multiplicitous because each check Ajayi wrote to himself and cashed was a separate execution of the fraud scheme. Because Ajayi failed to challenge the indictment on multiplicity grounds before trial, the claim is forfeited and subject to plain error review. *United States v. Parker*, 508 F.3d 434, 440 n.5 (7th Cir. 2007).

Counts 1, 2, 3, 5, and 6 of the indictment charged Ajayi with bank fraud under 18 U.S.C. §§ 1344(1) and (2). The indictment alleged a fraud scheme where Ajayi, knowing the check had been altered, deposited the check into his business account to create an inflated balance. The balance was inflated, the government alleged, to deceive JP Morgan Chase into honoring checks and paying debits drawn on the account. Count 1 described this general scheme and the first check drawn on the business account that Ajayi wrote to himself and cashed. Of the remaining bank fraud counts, each count was for one of the four other checks drawn on the business account that Ajayi wrote to himself and cashed.

A multiplicitous indictment charges a single offense as separate counts. *United States v. Starks*, 472 F.3d 466, 468–69 (7th Cir. 2006). It exposes the "defendant to the threat of receiving multiple punishments for the same offense in violation of the Double Jeopardy Clause of the Fifth Amendment." *Id.* at 469. To "determine whether a given indictment contains multiplicitous counts, we look to the applicable criminal statute to see what the allowable 'unit' of prosecution is—the minimum amount of activity for which criminal liability attaches." *United States v. Allender*, 62 F.3d 909, 912 (7th Cir. 1995).

The bank fraud statute criminalizes a knowing execution of a scheme to defraud a financial institution or a scheme to obtain money under the custody or control of a financial institution by means of fraudulent representations. 18 U.S.C. § 1344. "This and other circuits have consistently held that each 'execution' of a scheme, rather than a mere 'act in furtherance of such a scheme,' constitutes a separate violation of § 1344." *Allender*, 62 F.3d at 912 (quoting *Longfellow*, 43 F.3d at 323); *see also Anderson*, 188 F.3d at 889. A single criminal scheme may have more than one execution. *Anderson*, 188 F.3d at 889. Furthermore, "the crime of bank fraud is complete when the defendant places the bank at risk of financial loss, and not necessarily when the loss itself occurs." *Id.* at 888.

An act is an indictable "execution" rather than a non-indictable "act in furtherance" when the act puts the bank at an additional financial risk. *See Longfellow*, 43 F.3d at 323 (collecting cases). Additionally, an execution is "chronologically and substantively independent," where no act "depended on others for its existence, and each [act] had its own

function and purpose—they were interrelated only because they involved the same overall scheme." *Id.* (citing *United States v. Molinaro*, 11 F.3d 853, 860 (9th Cir. 1993)) (alterations omitted).

Here, each withdrawal was not a "chronologically and substantively independent" act. The withdrawal of funds, the basis for counts 2, 3, 5, and 6, was entirely dependent on the initial deposit of the fraudulent check. Additionally, the acts were not chronologically separate, as each act charged occurred within days of the other.

Also, the withdrawal of funds did not put the bank at any additional risk. When it released the funds from the check to the account, the bank put itself at risk for losing the entire amount of the check, and the subsequent withdrawals did not create an additional risk. So, they are not executions. Rather, they are acts in furtherance of the crime. As a result, we hold that withdrawals of money credited to an account that is the proceeds of a fraudulent check are not indictable separate executions. *See United States v. Hord*, 6 F.3d 276, 281–82 (5th Cir. 1993) (holding that under the bank fraud statute the deposits of fraudulently obtained funds constitute the execution of the fraud scheme, not the attempts to withdraw funds); *see also Longfellow*, 43 F.3d at 324 (discussing *Hord*). Therefore, counts 2, 3, 5, and 6 are multiplicitous of count 1, and Ajayi was exposed to double jeopardy. *See Starks*, 472 F.3d at 468–69. So his convictions and sentence were illegal and a miscarriage of justice. *See United States v. Podell*, 869 F.2d 328, 332 (7th Cir. 1989). We vacate his convictions on counts 2, 3, 5, and 6 and remand for resentencing because the district court committed plain error by permitting his convictions.

The government argues that even if there were an error, it need not be corrected because the sentence was significantly below the statutory maximum, and the guideline range for one conviction would be the same as for five. However, we do not agree and conclude that these counts must be vacated. *Parker*, 508 F.3d at 441 (citing *United States v. Ball*, 470 U.S. 856, 864–65 (1985)). At the very least, the district court must vacate the $100 special assessment for each multiplicitous conviction. Also, the district court sentenced Ajayi to eight months for each multiplicitous conviction, to run consecutively. Since there is simply no way to ascertain whether the district court would have imposed the same sentence if Ajayi had been convicted of only one bank fraud count instead of five, we must remand the case for resentencing.

### E.  There Was No Variance.

Finally, Ajayi argues that there was a fatal variance between the indictment and proof at trial because the scheme presented at trial was categorically different and broader than the scheme alleged in the indictment. Specifically, Ajayi contends that the indictment alleges that Ajayi was responsible for diverting the check from ABM to his business; while at trial, the government did not attempt to prove this fact. Instead, it showed that Ajayi deposited a check that he knew was altered (because it was obvious on the face of the check) into his business account and made withdrawals from the account. Ajayi maintains that this varied the proof because based on the indictment, he believed that the government had to link him to the check in some way before its forgery. He further maintains that he was unable to anticipate that the government would present evidence that the diversion of the check and its forgery were not committed by Ajayi

and that he knew the check was altered because the alterations were facially obvious. And as a result, he was left unprepared to defend himself. Because Ajayi failed to raise this challenge below, the claim is subject to plain error review. *United States v. Duran*, 407 F.3d 828, 843 (7th Cir. 2005).

Although Ajayi references a constructive amendment, we find none. A constructive amendment occurs when the evidence presented at trial supports a crime other than the one charged. *See United States v. Ratliff-White*, 493 F.3d 812, 820 (7th Cir. 2007). Neither Ajayi's arguments nor the evidence support the conclusion that the evidence at trial established a crime different from the one charged. So, we will examine whether there was a variance.

"A variance between indictment and proof exists 'when the terms of the indictment are unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment.'" *Id.* (quoting *United States v. Galiffa*, 734 F.2d 306, 312 (7th Cir. 1984)). "A variance is fatal only when the defendant is prejudiced in his defense because he cannot anticipate from the indictment what evidence will be presented against him … ." *Id.* (quoting *Hunter v. State of N.M.*, 916 F.2d 595, 599 (10th Cir. 1990)) (alteration omitted). "When … the indictment gives a defendant particular notice of the events charged, and the proof at trial centers on those events, minor differences in the details of the facts charged, as contrasted to those proved, are unlikely to be either material or prejudicial." *United States v. Reeder*, 170 F.3d 93, 105 (1st Cir. 1999).

The facts at trial did not substantially vary from the factual allegations in the indictment. The indictment asserted, and the evidence at trial showed, that: (1) Ajayi had a busi-

ness bank account; (2) he obtained the fraudulent check; (3) the fraudulent check was altered by someone; (4) Ajayi, knowing that the check had been altered, deposited the check; and (5) Ajayi made several withdrawals from the account in the form of checks payable to himself.

The only fact presented not included in the indictment was that the alteration to the check was obvious from the face of the check. "The proof at trial is necessarily more detailed than the facts alleged in the indictment, which is simply a 'plain, concise and definite written statement of the essential facts constituting the offense charged.'" *Id.* (quoting Fed. R. Crim. P. 7(c)(1)). As previously stated, the indictment charged a scheme to defraud the bank by Ajayi submitting a check he knew was altered. Proof at trial was the same. Contrary to Ajayi's contention, the indictment does not allege how Ajayi knew the check was altered. This information is part of the "more detailed" facts that were proof at trial but not part of the indictment. In our view, there was no material variance.

Even if there were a variance, we find that Ajayi was not prejudiced by it. Ajayi argues that had he known that the government was going to argue that he knew the check was altered because the alterations were obvious from the face of the check, he would have moved for a bill of particulars or to dismiss the indictment, or added expert testimony to establish that a layperson would not have known the check was altered. However, Ajayi knew the material elements of the crime and that the government was going to try to establish that he knew the check was altered. It was up to Ajayi and his attorney to come up with ways to show that he did not have the requisite knowledge. He could have filed motions

and retained an expert to defend against the knowledge element based on the indictment as written. Also, because one of the charges was that he made and possessed an altered check, he could have anticipated that the government was going to submit evidence about the alteration. Therefore, we conclude that he was not prejudiced because he could anticipate from the indictment what evidence was going to be presented against him.

### III. CONCLUSION

Therefore, we VACATE the convictions for counts 2, 3, 5, and 6 because they are multiplicitous and REMAND this case to the district court for resentencing. We AFFIRM all other issues raised on appeal.